ESTATE OF ARTHUR W. BRUNSON, DECEASED *v.*
MARY B. WHITE.

[No. 1-872A37. Filed July 31, 1973. Rehearing denied August 30, 1973.
Transfer denied December 26, 1973.]

*William H. Wolf, Wolf & Robak,* of Greenfield, *John H. Himelick, Himelick, Himelick & Smith,* of Connersville, for appellant.

*James S. Foster, Richard K. Levi, Earnest, Foster & Eder,* of Rushville, *Jim C. Cordes, Cordes & Baker,* of Connersville, for appellee.

LOWDERMILK, J.—Plaintiff-appellee filed a claim for services rendered, including nursing services, against the estate of her deceased father. The claim was disallowed and transferred to the Entry and Issue Docket for trial. On February 2, 1972,

the jury returned its verdict in favor of the plaintiff-appellee for $12,850 on which the court duly entered judgment on February 11, 1972.

On February 10, 1972, defendant-appellant's counsel discovered that during the last day of the trial, which was recessed from about 10:30 A.M. until 1:30 P.M. preparatory to making closing arguments and instructing the jury, and after both parties had rested, a juror, namely Edwin P. Kerr, without the knowledge of the court, the parties, lawyers or other jurors, allegedly went to a nursing home in Connersville, inquired as to the value of nursing services and wrote down the information obtained in a day book.

Mr. Kerr was later elected foreman of the jury. During the course of jury deliberations he allegedly informed the other jurors he had obtained charges for nursing home care and for various types of nursing services, which rates and charges he had obtained during the noon recess at the nursing home from Nurse Jenkins and which he read from his "day book."

The only evidence presented to the jury by the plaintiff-appellee as to value of services rendered was by Roberta Keller, claimant's niece, who was a registered nurse at Columbus.

She testified that she had called and asked about the charges for private nursing and practical nursing and that was the information she had as to the value thereof. In fact, she testified she could not give an opinion as to value of services for nursing and household services rendered by the claimant. She did testify that she thought private duty practical nurses received $25.00 for an 8 hour shift.

On the same day, defendant-appellant's counsel first learned of Mr. Kerr's conduct OUTSIDE the presence of the jury and on that very day counsel Himelick interviewed Mr. Kerr; on February 11, 1972, defense counsel Wolf interviewed Nurse Ann Jenkins at the nursing home and also interviewed juror William H. Eckerle on February 17, 1972.

Thereafter, on March 31, 1972, defendant-appellant filed her motion to correct errors setting forth the specification of the misconduct of a juror. This is an appeal from an adverse ruling on that motion.

The trial court had correctly admonished the jurors in preliminary instructions not to talk to any other persons about the trial, not to form or express an opinion until the case was finally submitted to them, and to reach a verdict solely upon what they heard and saw in court; that during the progress of the trial the jurors were not permitted to ask questions of any of the witnesses, the parties or their attorneys; nor were the jurors permitted to take notes of the proceedings, and when an exhibit was introduced into evidence it might be exhibited to the jurors at that time but without discussion at the time the exhibits were submitted to the jurors.

Affidavits of Mrs. Jenkins of the nursing home, of attorney Wolf, based entirely upon information supplied by juror Eckerle, and the affidavit of attorney Himelick on the information supplied by juror Kerr were filed at the same time as the motion to correct errors.

Defendant-appellant vigorously contends that Mr. Kerr's evidence was obtained OUTSIDE the courtroom for the sole purpose of helping the plaintiff and read the cost figures to the other jurors so as to influence them with his evidence and to insure that an award would be made to Mrs. White in an amount to Mr. Kerr's satisfaction, all of which prevented the defendant from receiving a fair and impartial trial.

Mrs. Jenkins, the registered nurse at the nursing home, stated by affidavit that an unidentified man came to the Center on February 2, 1972, at approximately 12 noon and conducted a detailed interrogation of her regarding nursing care costs, which costs she gave him and he promptly left. Apparently Mrs. Jenkins knew nothing about the lawsuit and was not a party thereto.

The affidavit submitted by attorney Himelick was to the effect that he conferred with Mr. Kerr, who admitted his conversation with Mrs. Jenkins and that Mr. Kerr admitted making his findings known to the other jurors and Mr. Kerr stated that the jury had received no instructions not to receive OUTSIDE information relating to the cause.

The affidavit submitted by attorney Wolf to the trial court related the statement of William H. Eckerle, a member of the jury, wherein Eckerle stated he had heard the case and when the jury retired to deliberate the matter Mr. Kerr was elected foreman and told the jury he had gone to the Connersville Nursing Home, obtained the figures on the cost of nursing home care, and Mr. Kerr had these figures written down in a "day book" and read said figures to members of the jury.

Defendant-appellant contends that the evidence in affidavit form was competent and should have been considered by the trial judge and that it would have been proper for the trial judge to have brought the jurors and Mrs. Jenkins into court and heard their evidence as to what happened OUTSIDE the jury room. He further contends that the affidavits of attorneys are not affidavits permitting the jurors to impeach their own verdict and urges that the court should have accepted those affidavits as evidence of gross misconduct of the jury proceedings which procedurely denied the defendant a fair trial.

Misconduct is defined in Burns Ind. Ann. Stat. § 2-2016 at follows:

"Caution by court at each adjournment—If the jury are permitted to separate, either during the trial or after the cause is submitted to them, they must be admonished by the court that it is their duty not to converse with each other, or suffer themselves to be addressed by any other person, on any subject of the trial; and during the trial, that it is their duty not to form or express among themselves, an opinion thereon, until the cause is finally submitted to them."

Defendant-appellant cites Lowe's Revision of Works Indiana Practice, Vol. 4, § 61.37, which states that it is misconduct which will vitiate the verdict for any of the jurors to visit the premises or property in controversy, especially if he converses with others about the same.

This statement of the law is reaffirmed in the case of *Western Indiana Gravel Co.* v. *Opp* (1951), 121 Ind. App. 673, 99 N.E.2d 265, wherein the court said:

"The law is well settled that anything the jurors saw cannot be considered as evidence and that damages can be recovered only upon evidence introduced at the trial, subject to proper instructions from the court."

Defendant-appellant further cites from Lowe's Revision of Works Indiana Practice, Vol. 4, § 61.39 as follows:

"It is well settled by authority in this state that no part of the evidence in the cause can be taken to the jury room without the consent of the parties, except such exhibits as are made parts of the pleadings and have been used in the evidence and where other papers that are relevant and material to the case have been taken to the jury room and used by the jurors in reaching a verdict, such misconduct is a cause for a new trial."

In the case of *Siebeking et al.* v. *Ford* (1954), 125 Ind. App. 365, 371, 372, 122 N.E.2d 880, after both sides had rested and the trial court stood recessed for the purpose of settling final instructions, plaintiff's last rebuttal witness, a police officer, had an unauthorized conversation with at least one juror, telling him that the report with which such officer refreshed his memory while testifying was confidential. The conversation occurred OUTSIDE the courtroom in a hall way. Thereafter, the judge and all attorneys returned to the courtroom and after instructions and deliberations the jury returned an $11,000 verdict for the plaintiff. This court said:

". . . The fact that under the circumstances shown counter affidavits could have been presented, and that the appellee

did not see fit to so present such counter affidavits imports verity to the facts stated in the affidavits in question . . . Counter affidavits showing that no injury could have resulted may be submitted, and upon such showing the new trial may be denied. The facts shown in the bill of exceptions show sufficient misconduct to prejudice the rights of appellants. The lower court therefore erred in overruling appellants' motion for a new trial. Judgment reversed."

It must be noted and considered that the cases relied upon by the appellant involved affidavits of third parties and not affidavits secured from a juror or jurors, and are distinguishable from the affidavits in the case at bar.

In the case at bar plaintiff-appellee did not file counter-affidavits and under the holding in *Siebeking, supra,* defendant-appellant insists that the trial judge should have accepted the affidavit as true. He also points out that the affidavits were submitted for the purpose of showing misconduct OUT-SIDE the jury room which prevented the defendant from having a fair and impartial trial.

It has long been and still is the law in Indiana that a juror may not impeach his own verdict, directly or indirectly. *Anderson* v. *Taylor* (1972), 154 Ind. App. 217, 289 N.E.2d 781; *Wilson* v. *State* (1970), 253 Ind. 585, 255 N.E.2d 817.

Defendant-appellant relies on new Federal Rule on Evidence 606(b), which does not conform to Indiana practice and will not be considered herein.

Plaintiff-appellee relies on the case of *Long* v. *State* (1884), 94 Ind. 481, which is a criminal case and in which a juror took notes and which cause was attempted to be reversed because of misconduct of the juror and in which the Supreme Court, in sustaining the trial court, said:

"Another rule is also well settled, viz. 'Where a motion for a new trial is based upon the alleged misconduct of jurors, and the trial court hears evidence, either orally or by affidavits, touching on such misconduct, its conclusions

will not be disturbed by the Supreme Court on the weight of the evidence.'

\* \* \*

Another general rule is that the misconduct of a jury must be gross, and clearly appear to have injured the complaining party, to justify the granting of a new trial."

It must be remembered that in the case at bar the problem is not gross misconduct of a juror, but his misconduct OUTSIDE the jury room or court room.

However, there is not sufficient evidence in the record to support the allegation of juror misconduct and we find no abuse of discretion on the part of the trial judge.

If the affidavit of Nurse Jenkins had positively identified the person who visited the nursing home as a juror, then, in our opinion, the unanswered affidavit would have been sufficient to raise the question of the juror's misconduct, but having failed to do so, the affidavit is not complete and leaves the question of a juror's misconduct as conjecture to be passed on by the trial judge. Defendant-appellant attempted to complete that defect by the tendered affidavits of the two attorneys based on information received from two jurors.

This is an apparent attempt to evade the long-established rule that a juror cannot impeach his verdict. However, the only construction we can find tenable is that the two affidavits insert hearsay based solely on conversations with two jurors, which is not a proper procedure. Thus, the affidavits of the attorneys cannot support nor lend weight to their contention.

This case has been exceptionally well briefed by the parties with equally good arguments presented. The defendant-appellant insists that we should follow the Federal Rule (606(b), *supra*), certain federal cases and procedures from other jurisdictions where jurors are permitted to impeach their verdicts because of misconduct OUTSIDE the jury or court room.

Indiana has not seen fit to modify the time proven rule forbidding such impeachment and in line with the Indiana rule stated herein, we shall not attempt to modify or change that rule, as a change could possibly do severe damage to our jury system which Hoosiers still respect and hold inviolate.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 299 N.E.2d 186.