Timothy A. WAGNER, Appellant
(Plaintiff Below),

v.

Josephine RILEY, Appellee
(Defendant Below).

No. 20A03–8603–CV–75.

Court of Appeals of Indiana,
Third District.

Nov. 19, 1986.

Rehearing Denied Jan. 21, 1987.

Charles C. Wicks, Craig A. Rieff, Elkhart, for appellant.

Robert T. Sanders, III, Thomas R. Hamilton, Daniels, Sanders & Pianowski, Elkhart, for appellee.

STATON, Presiding Judge.

Timothy Wagner was injured when his car collided with a car driven by Josephine Riley. A jury returned a verdict in favor of Wagner and awarded him damages of ten thousand dollars ($10,000.00). Wagner appeals claiming the damages are inadequate and represent a compromise verdict which was the result of juror misconduct. Our resolution of this appeal focuses on the following issues:

I. May the jury's verdict be impeached by the affidavit of the bailiff who purportedly overheard remarks of a juror?

II. Did the trial court err when it ruled the prayer for damages in Wagner's complaint inadmissible for impeachment purposes?

III. Were the damages awarded inadequate as a matter of law?

We follow a strict standard when reviewing a damage award claimed to be excessive or inadequate. A verdict will be reversed only when it is apparent from a review of the evidence concerning the injuries that the amount of damages assessed by the jury is so small or so great as to indicate that the jury was motivated by prejudice, passion, partiality or corruption or considered an improper element. *Faulk v. Chandler* (1980) Ind.App., 408 N.E.2d 584, 586. Damages will not be deemed the result of improper considerations unless the size of the award cannot be explained on any other reasonable ground. *Crump v. Rhodes* (1986) Ind.App., 488 N.E.2d 741, 743, *trans. pending.* Wagner's burden, therefore, is not merely to show alleged juror misconduct, but to demonstrate that the award cannot be sustained on any other interpretation of the evidence.

Wagner's allegation of jury misconduct is predicated on a series of events which he claims leads inescapably to the conclusion that the verdict was a compromise. His hypothesis begins with defense counsel's attempt to impeach him. On direct examination, Wagner testified that he had remarked to one of his doctors, "Well, I don't have a lawyer, and I have this constant pain. I'm not out for the big bucks." On cross examination Wagner was asked if in his complaint he had asked for half a million dollars. Wagner's counsel objected and the trial judge sustained the objection, instructing the jury to disregard the question. With his motion to correct errors Wagner submitted the affidavit of the bailiff in charge of the jury. The bailiff stated that approximately thirty (30) minutes after the jury retired to deliberate he was called into the jury room and told that the jurors were deadlocked 5 to 1 and that the one juror would not budge from his position. Thirty minutes later the bailiff was

summoned to the jury room and told that the jury had reached a verdict. While outside the jury room, just before the jurors returned to the court room, the bailiff heard a voice he recognized as that of the foreman say, "Once I heard that he was asking for $500,000.00, that was it for him."

Wagner argues that the foregoing events, coupled with what he claims is an unjustifiable damage award, prove that the foreman improperly disregarded the court's admonition regarding the amount of the prayer. The events further prove that the foreman was biased against Wagner, and they give rise to the inference that the foreman was the holdout juror. The obvious conclusion, according to Wagner, is that the jury compromised to accommodate him.

Riley counters that the trial court should not have excluded the question about the prayer amount, because it was proper impeachment and that, in any event, the jury's verdict may not be impeached by the bailiff's affidavit merely repeating statements of the jurors.

## I.

### Exclusion of Prayer Amount

Upon Riley's offer to prove, the trial court found that the proffered testimony did not constitute a judicial admission, was an improper attempt to impeach, and that the pleadings were supplanted by the pretrial order and were, therefore, irrelevant. Riley argues that the prayer amount of $500,000.00 constituted an admission by Wagner and was inconsistent with his earlier statement that he was "not out for big bucks," therefore, it was admissible to impeach Wagner.

■ In general, any statement or admission against interest, wherever made, is admissible at trial. *Rediehs Express, Inc. v. Maple* (1986) Ind.App. 491 N.E.2d 1006, 1009, *trans. pending.* However, a party cannot take advantage of an admission in the pleadings of his adversary where he has denied the truth of the allegation and

joined issue upon it ... even though the denial be an indirect one. *Brown v. Grzeskowiak* (1951) 230 Ind. 110, 101 N.E.2d 639, 645; *Lamb v. Thieme* (1977) 174 Ind.App. 287, 367 N.E.2d 602, 605. The amount of damages was very much at issue in this case, therefore we do not believe the amount of the prayer was a proper basis for impeachment. Furthermore, the relevancy of evidence is left to the sound discretion of the trial court which determines whether the evidence in question has a logical tendency to prove a material fact. *Kennedy v. St. Joseph Mem. Hosp.* (1985) Ind.App., 482 N.E.2d 268, 275. We find no abuse of discretion in the exclusion of the tendered evidence.

## II.

### Impeachment of the Verdict

■ The impeaching evidence having been properly excluded, Wagner argues the bailiff's affidavit shows the jury foreman ignored the court's admonition, was, therefore, biased against Wagner and improperly influenced the jury to compromise on the damage award. Setting aside for the moment Wagner's assertion that the damages were improperly low, we address the issue of whether the jury's verdict may be impeached by the bailiff's affidavit relating remarks he overheard a juror make.

It is settled beyond dispute that a verdict may not be impeached by affidavits or testimony of the jurors themselves. *Stauffer v. Lothamer* (1981) Ind.App., 419 N.E.2d 203; *State v. Normandy Farms* (1980) Ind. App., 413 N.E.2d 268; *Estate of Brunson v. White* (1973) 157 Ind.App. 211, 299 N.E.2d 186. Nevertheless, Wagner argues that a third party's affidavit may be offered to document statements of jurors which reveal bias or prejudice which may have affected the verdict. We do not believe that to be the rule in Indiana. In *Stanley v. Sutherland* (1876) 54 Ind. 339 the Court considered the affidavit of a third party alleging misconduct on the part of the jury and upheld the overruling of a

motion for a new trial based on the affidavit.

The affiant does not state how he obtained the information of the alleged misconduct of the jury. ... If it came to him from some of the jurymen, it could not be received, for it has long been settled in this state that the affidavits of jurors cannot be received to impeach their verdict; much less could their statements be received at second hand.

54 Ind. at 356. The anomaly of permitting jurors' statements to be introduced through a third party was discussed further by the Court in *Hutchins v. State* (1898) 151 Ind. 667, 52 N.E. 403. There the Court said,

And as such statement, verified or unverified, could not be received from the juror to impeach the verdict or the conduct of the jury in making it, such statement cannot be received from one deriving his knowledge from a juror (at second hand); otherwise, the inhibition of the law against jurors impeaching their verdict is frittered away and destroyed. ... That would be authorizing something to be done indirectly that the law forbids to be done directly.

52 N.E. at 406.

More recently, in *Estate of Brunson v. White* (1973) 157 Ind.App. 211, 299 N.E.2d 186 this court was faced with a similar challenge to a jury's verdict. The defendant tendered the affidavits of the parties' attorneys which revealed information received from two jurors to the effect that one of the jurors, during a lunch recess before the close of evidence, had made inquiries at a local nursing home regarding the value of nursing services—an issue in the case. The court said this was an apparent attempt to evade the long-established rule that a juror cannot impeach his verdict and that the affidavits inserted hearsay based solely on conversations with the jurors, not a proper procedure. 299 N.E.2d at 190. Under similar circumstances in *Henry v. State* (1978) 269 Ind. 1, 379 N.E.2d 132 the Supreme Court held, "[T]he use of the jurors' testimony, first or second

hand, to demonstrate improprieties in the method by which the jury reached its verdict constitutes impeachment of the verdict by the jurors, which is not permitted." 379 N.E.2d at 139. We perceive no difference in the application of the rule when the juror's statement is overheard rather than communicated directly to the third party by the juror. The statement of a juror is being offered to impeach the verdict in either case and this, the law does not permit. The trial court did not err in denying the motion to correct errors on this basis.

### III.

#### Inadequate Damages

Wagner's final contention is that the damages awarded were inadequate as a matter of law. In reviewing such a claim, we look only to the evidence and reasonable inferences therefrom which are favorable to the jury's verdict. *Crump v. Rhodes, supra* at 742.

After the accident on May 6, Wagner complained of neck and back pain with pain radiating into his leg. He was treated initially by his family doctor who prescribed pain medication, muscle relaxers, and a course of physiotherapy. The doctor described Wagner's injury as a fairly typical whiplash injury which generally resolves itself in time. After more than a month of treatment, including almost daily heat-massage treatments, without significant improvement, Wagner was referred to a neurosurgeon, Dr. Shapiro. Dr. Shapiro performed a number of tests which were negative except for a slight impairment of Wagner's ability to bend forward. The doctor said this would indicate muscle tension in the back. Dr. Shapiro ordered a CT scan—a computer assisted x-ray—which was normal. On August 5 Dr. Shapiro suggested that Wagner try to return to work. Wagner was then referred to an anesthesiologist for caudal blocks—injections designed to alleviate pain. Although there was some relief, the pain apparently returned and Dr. Shapiro admitted Wagner to the hospital for a myelogram to deter-

mine if there was spinal nerve irritation. The test was normal.

During hospitalization Wagner underwent physical therapy consisting of exercise, heat treatment and massage. Wagner had further caudal blocks and spinal manipulations from Dr. Losch an osteopathic physician and anesthesiologist. Wagner had some relief with these treatments. When Wagner later complained of clicking or popping in his back and hip, Dr. Shapiro referred him to an orthopedic surgeon. The orthopedic surgeon was unable to detect the clicking or popping and could not offer any concrete diagnosis or further therapeutic treatment.

Wagner was referred to Dr. Baran, a neurosurgeon who specializes in chronic pain. Dr. Baran recommended a surgical procedure which Dr. Shapiro recommended against. Finding no objective evidence of spinal column, spinal cord or nerve injury, Dr. Shapiro diagnosed Wagner as suffering from chronic pain syndrome and evaluated his impairment at one percent (1%).

■ Wagner argues that the jury ignored the court's instructions and failed to compensate him for several elements of "proven" damages. For example, Wagner claims he proved lost wages of $10,678.22. While we do not quarrel with Wagner's claim that a plaintiff should be compensated for the time he was unable to work, whether he would have been employed or not, *See Rieth-Riley Construction Company, Inc. v. McCarrell* (1975) 163 Ind.App. 613, 325 N.E.2d 844, there was a dispute as to whether Wagner's injuries prevented him from working for the more than forty-one (41) weeks he was out of work. At issue was the extent and severity of Wagner's injury. He was examined and treated by a number of doctors, none of whom was able to document any objective signs of injury. Although the evidence showed that soft-tissue back injuries are frequently not susceptible of objective proof, there was also evidence that such injuries generally resolve themselves within a few months. The jury was entitled to take into consideration all the evidence in deciding whether

the entire time Wagner was absent from work was the result of the auto accident. *Cox v. Winklepleck* (1971) 149 Ind.App. 319, 271 N.E.2d 737, 739.

■ Similarly in determining whether to award damages for pain and suffering both past and future, the jury was in the best position to weigh the evidence in making its determination of damages. In personal injury actions the jury is not required to award substantial dollars for pain and suffering; nominal damages are appropriate under proper circumstances. *Cox v. Winklepleck, supra,* 271 N.E.2d at 739–40.

■ As to the evidence of impairment, ranging from 1% to 15%, the jury was free to accept or reject expert testimony and to determine the value of such damage, if any. *Sanders v. Cole Municipal Finance* (1986) Ind.App., 489 N.E.2d 117, *trans. pending.*

The damage award was sufficient to cover Wagner's undisputed medical expenses plus an additional $3,400.00. This was within the range of the evidence and it was the province of the jury to determine the proper amount. Wagner has failed to demonstrate that the award cannot be explained on any ground other than prejudice, passion, partiality or corruption. We cannot say, therefore, that the award was inadequate as a matter of law.

The judgment is affirmed.

HOFFMAN and GARRARD, JJ., concur.