Betty A. PRANGE, Appellant–
Defendant Below,

v.

Pamela J. MARTIN, Appellee–
Plaintiff Below,

Maribeth Ekstrand, Appellee–
Defendant Below.

No. 20A03–9211–CV–367.

Court of Appeals of Indiana,
Fourth District.

March 2, 1994.

Rehearing Denied May 12, 1994.

James H. Pankow, Jones, Obenchain, Ford, Pankow & Lewis, South Bend, for appellant.

James F. Groves, William T. Webb, Hardig, Lee & Groves, South Bend, for Pamela J. Martin.

Robert J. Palmer, Wendell W. Walsh, May, Oberfell & Lorber, South Bend, for Maribeth Ekstrand.

MILLER, Judge.

At about 8:00 p.m. on October 21, 1988, a car driven by Betty A. Prange, age 67, ran a stop sign at the intersection of Cleveland Road and Bittersweet Road in St. Joseph

County. Prange's car struck a car driven by Maribeth Ekstrand, then spun out of control and struck a third car owned by Pamela Martin and driven by Ralph Irvin. Pamela was sitting in the back seat directly behind Ralph. Prange's car hit the Martin car on the driver's side. Pamela was injured and trapped in her car. Pamela sued Prange and Ekstrand alleging negligence on both their parts and seeking damages for her past and future: Medical expenses, lost wages, and pain and suffering.

Following a three day trial, on May 29, 1992, the jury found that Prange was solely responsible for the accident and awarded Pamela $1,325,000 in damages. Prange asks us to reverse and remand for a new trial because: (1) the trial court erred in instructing the jury; (2) the trial court erroneously admitted opinion testimony by a police officer; and (3) the damage award was based upon passion, prejudice, sympathy or consideration of attorney fees as an element of damages. Ekstrand cross-appeals and claims her motion for judgment on the evidence should have been granted.

We affirm the jury's verdict. Therefore, Ekstrand's claim is moot.

### DECISION

### I. JURY INSTRUCTIONS

#### A. Instruction No. 12

■ The trial court gave Final Instruction No. 12 over Prange's objection. Final Instruction No. 12 states: "A motorist has the right to assume that the other person will obey the law and will exercise due care and reasonable care." R. 124. Prange claimed that the instruction was incomplete because it did not contain the phrase "absent notice to the contrary." [1] In other words, Prange objected on the basis that a driver does not

have a right to assume that another will comply with the law if the negligence is so apparent as to apprise a driver of impending danger. Prange's proposed addition of "absent notice to the contrary," however, does not adequately convey that meaning because the word "notice" is vague and connotes multiple meanings. For instance, does the word "notice" mean that a motorist may not assume the other will act with reasonable care if the other's negligence is possible? ... likely? ... apparent? ... fully appreciated? Must the "notice" be from personal observation, or does it include a warning from a third party? In the present context, it is unclear what "notice" is, and as a result, what is the corresponding right of the motorist.

■ The language at issue—"notice to the contrary"—appeared in *Brock v. Walton* (1983), Ind.App., 456 N.E.2d 1087, which was not an instruction case. It is well settled that merely because certain language appears in an opinion, that language is not necessarily proper for a jury instruction. *Hare v. State* (1984), Ind., 467 N.E.2d 7, 16. What is more persuasive, however, is that fact that the case relied upon by *Brock*, *Smith v. Insurance Company of North America* (1980), Ind.App., 411 N.E.2d 638, cautions that "notice" must encompass more than just mere knowledge of a condition. In concluding that giving a *res ipsa* instruction was proper even in light of the fact that the plaintiff saw the defendant's unattended trash fire moments before the fire spread to, and destroyed plaintiff's property, the *Smith* court stated:

[u]nless a party has notice to the contrary, he has the right to assume others who owe him a duty of reasonable care will exercise such care. It is not mere knowledge of the condition, i.e., fire on the ground, which

1. Prange objected for the:
 [R]eason that the decisions in Indiana state that a driver having a right-of-way may not assume, because the rules of the road give certain rights that the motorist can avail himself thereof with indifference to the rights of others, this being the holding in *Beem v. Steel* (1967), 140 Ind.App. 512, 224 N.E.2d 61, and *Keltner v. Patton* (1933), 204 Ind. 550, 185 N.E. 270. The Supreme Court of Indiana held

that if a motorist's negligence is so apparent as to apprise another [of] impending danger, such other driver must exercise means and care at his command and exercise care of an ordinarily prudent person so situated.
 Defendant further objects to the court's failure to add the clause at the end of the instruction to which this objection is made as follows: 'absent notice to the contrary.'
 R. 730–731.

will charge a party with negligence; he must also appreciate the peril.

*Id.* at 641 (citations omitted). Therefore, even if a motorist has "notice" of another's negligence, the motorist must also recognize the peril that negligence creates.

■ It is important to note that the issue before the jury was not whether Ekstrand had notice that Prange was not going to stop, but whether Ekstrand, based upon all the facts and circumstances, acted as a reasonably prudent person would have acted. *See* part B, *infra.* Prange's proposed addition to Instruction No. 12 was an attempt to instruct the jury that they must consider whether Ekstrand acted reasonably under all the facts and circumstances. While the trial court properly refused Prange's proposed addition because the language was vague and confusing, the substance of Prange's proposed addition to Instruction No. 12 was adequately covered by other instructions.[2] We will not reverse the trial court for failing to give the best possible instructions and will affirm as long as the trial court gave instructions which adequately and correctly stated the law. *Underly v. Advance Machine Company* (1993), Ind.App., 605 N.E.2d 1186, 1191 *reh'g denied, trans. denied.* Read as a whole, the instructions given by the trial court properly advised the jury of the law.

## B. Prange's Seven (7) Rejected Instructions

■ Prange claims the trial court erred by rejecting seven (7) of her tendered instructions.[3] We disagree. First, we must

2. The court instructed the jury on proximate cause as follows:

### Instruction No. 4
It is required by law that the negligence of the Defendants be at least one "proximate cause" of Plaintiff's injuries and damages, if any, before Plaintiff can recover. However, for a Plaintiff's injuries and damages to be proximately caused by the negligent act or omission of Defendants, the injuries need only be a natural and probable result thereof; the injuries only need be those which should reasonably have been foreseen or anticipated in light of the circumstances. R. 116.

### Instruction No. 5
The term "proximate cause" means that cause which, in natural and continuance sequence, unbroken by any efficient intervening cause, produces the injury and damage complained of and without which the result would not have occurred. R. 117.

The court also defined negligence:

### Instruction No. 7
Negligence, on the part of the defendants, is the failure to do what a reasonably careful and prudent person would have done under the same or like circumstances, or the doing of something which a reasonably careful and prudent person would not have done under the same or like circumstances. In other words, negligence is the failure to exercise reasonable or ordinary care. R. 119.

Reasonable care was defined in Instruction No. 8 which states:
Reasonable care or ordinary care is such care as a reasonably careful and ordinarily prudent person would exercise under the same or similar circumstances. R. 120.

The trial court elaborated on this concept in Instruction Nos. 9, 10, and 11 which state:
It is the duty of every driver of a vehicle using the public roadway to exercise the care an ordinary prudent person would use, under the same or like circumstances, and the failure to exercise such care constitutes negligence. If you find that the defendants, or either of them, breached this duty, then you may find in favor of Pamela Martin on her claim against the defendants. Since Pamela Martin was free of any negligence and was not responsible for the collision, it is your duty to determine whether the defendants, or either of them, breached their duty, and if so, the respective percentage of fault of each defendant in causing the accident. R. 121.

### Instruction No. 10
At the time of the occurrence being considered, there was a statute in effect in the State of Indiana [which] provided in part as follows:
Every driver of a vehicle shall stop ... in obedience to any [stop] sign ... before entering [an] intersection.
If you find from a preponderance of the evidence that either defendant violated the statute on the occasion in question, such conduct would constitute negligence on the part of that defendant. R. 122.

### Instruction No. 11
It is the law in the State of Indiana that if you find from a fair preponderance of the evidence in the case that either defendant exercised all the attention and care in driving her automobile which would be considered reasonably necessary under the circumstances, then that defendant was not guilty of any wrongful act or omission of duty. If you make such a finding, then Pamela J. Martin is not entitled to recover any damages against that defendant, and your verdict should be accordingly for that defendant. For if there is no negligence on the part of one person, another cannot recover damages against that person, even though the person suing has been damaged. R. 123.

3. These instructions read:

look at Final Instruction No. 2 which included the contentions of the parties (the parties conceded that plaintiff Martin was not negligent). The jury was instructed that Prange:

> denies fault and contends that fault of [Ekstrand] proximately caused the accident in question in that [Ekstrand] failed to maintain a reasonable lookout *after seeing the Prange vehicle approach and enter into the intersection at a time such movement could not be made with reasonable safety.*

R. 113–114 (emphasis added). The court then informed the jury in Instruction No. 3 that the contentions of the parties are "the formal way of presenting the issues for trial" and that although the contentions are not evidence, "any admission of fact contained in the contentions may be accepted as true." R. 115. Neither Prange nor Ekstrand added to nor objected to the above and accepted the issues as stated by the court. It is well established that an instruction, given without objection, becomes the law of the case. *Nelson v. Metcalf* (1982), Ind.App., 435 N.E.2d 39, 41; *Royer v. Pryor* (1981), Ind.App., 427

N.E.2d 1112, 1115. As such, it is the standard by which we review the case—the obvious reason being to prevent the appealing party from changing the theory of his case after trial.

Prange's contention contained within the instructions given to the jury without objection—i.e., that Ekstrand saw Prange approach and enter into the intersection—is the law of the case on review.[4] Thus the issue for the jury's consideration, as agreed upon by the parties in Final Instruction No. 2, was whether Ekstrand acted as a reasonably prudent person after seeing Prange approach and enter the intersection. Final Instruction No. 2 eliminated the issue of whether Ekstrand maintained a lookout (Prange's tendered instruction No 3). The trial court did not err in rejecting Prange's tendered instruction No. 3.

■ Furthermore, because Prange did not object that the instructions given by the trial court were incomplete (except for Final Instruction No. 12), she cannot now weave that claim in with her assertion that the trial

1. The driver of an automobile upon a public highway should exercise reasonable care in its operation and not assume that, because rules announced by statute give certain rights, the motorist can avail himself or herself thereof with apparent indifference and rights of others using the highway.
2. General rules announced by statutes regarding operation of automobiles on the public highways are not unyielding but must be applied in light of circumstances.
3. A duty to keep lookout is imposed upon motorists so that they may acquire knowledge of dangerous situations and conditions to enable them to take appropriate precautionary measures to avoid injury. The lookout duty includes the duty to look at vehicles approaching the highway from other intersecting roadways.
4. The fact that one vehicle has the right of way over another at an intersection does not relieve the driver of the favored vehicle from a duty to exercise reasonable care to avoid collision.
5. A motorist who stops at a stop sign at an intersection with unrestricted vision has the duty to observe obviously oncoming vehicles.
6. If a motorist's negligence is so apparent as to apprise another of impending danger, such other driver must exercise the means at his or her command and exercise the care of an ordinarily prudent person similarly situated to avoid injury.

7. At the time of the accident in question, the statutes of the State of Indiana provided:
 "No person shall start a vehicle which is stopped, standing or parked unless and until such movement can be made with reasonable safety."
 If you find from a preponderance of the evidence that defendant Maribeth Ekstrand violated the statute on the occasion in question, such conduct would constitute negligence on the part of Mrs. Ekstrand.
 R. 79–85.

4. The effect of Prange's contention instruction is similar to the effect of stipulations of issues contained within pre-trial orders. In *Leistikow v. Hoosier State Bank of Indiana* (1979), 182 Ind. App. 150, 394 N.E.2d 225, the Bank served a proposed pre-trial order on Leistikow, pursuant to the court's order. Leistikow failed to respond to the proposed order within the allotted time period, nor did he object to or attempt to modify the order. Leistikow had stipulated to submitting the issues contained within the pre-trial order to the trial court. When Leistikow complained on appeal that the trial court erred by treating his case as an action in foreclosure, this court held that "the pre-trial order supplanted the allegations raised in the pleadings and controlled the subsequent proceedings." *Id.* 394 N.E.2d at 228. As a result, the trial court properly considered only the legal issues contained within the pre-trial order. *Id.*

court erred in refusing her tendered instructions. This court addressed a situation similar to the instant case in *Gemmer v. Anthony Wayne Bank* (1979) 181 Ind.App. 379, 391 N.E.2d 1185, *reh'g denied.* We quoted the court in *State Farm Mutual Auto Ins. Co. v. Shuman* (1977), 175 Ind.App. 186, 370 N.E.2d 941, 956, thus:

> We are faced here with a situation in which a party's assertion of error regarding the refusal of a tendered instruction is predicated on a challenge to the court's instructions as erroneous. Under these circumstances. the complaining party should be required to make a specific objection to those instructions given by the court which disagree with or contradict the requested charge. *A party may not sit by and allow error to be committed and then attempt to take advantage of that error.* (Citation omitted) (emphasis added).

The *Gemmer* court then concluded:

> Where the argument, on appeal, of error in refusing a tendered instruction is based on an alleged inadequacy of the instructions actually given, to which the inadequacy no objection was made, we are tempted to think that either the theory was an afterthought or the error was hoped to be taken advantage of. *We will not allow Trial Rule 51(C) to be circumvented by permitting a party to preserve error by merely tendering a contradictory instruction instead of making a specific objection to a given instruction, and arguing later any theory that comes to mind.* (Emphasis added).

*Gemmer, supra,* 391 N.E.2d at 1187. Final Instruction Nos. 2 and 3 were given to the jury without objection. Prange cannot now complain that she was not allowed to instruct the jury on her theory of the case when she submitted a different issue to the jury. If there is any error present here, Prange has waived it by failing to make a specific objection to the instructions as given by the court.

■ The remainder of the tendered instructions are specific—addressing the con-

duct that is expected of a motorist in a given set of facts, however they merely repeat material adequately covered by other instructions—i.e., that negligence is the failure to do what a reasonably careful and prudent person would have done under the same or like circumstances.[5] The substance of Prange's tendered instructions are contained within the instructions given by the trial court. *See* n. 2, *supra.* Failure to give a tendered instruction which repeats material adequately covered by other instructions is not reversible error. *Underly, supra,* at 1191. Prange is not entitled to a new trial on the basis of alleged trial court errors in instructing the jury. The jury was properly instructed.

## II. OPINION TESTIMONY

■ Prange claims the trial court erred by allowing a police officer to give his opinion as to the primary cause of the accident. The admissibility of evidence is within the sound discretion of the trial court. We review only for an abuse of that discretion. *Brenneman Mechanical & Elec., Inc. v. First Nat. Bank of Logansport* (1986), Ind.App., 495 N.E.2d 233, *reh'g denied, trans. denied.*

Officer Timothy Scott of the St. Joseph County Police Department investigated the accident and testified at trial. On direct examination, Scott was asked if he had formed an opinion as to the cause of the accident. R. 244. Prange's counsel objected because the question went to the ultimate fact in issue and the jury did not require the assistance of an expert to determine this fact. The objection was overruled and Scott answered: "[T]he conclusion or opinion that I did come up with was that vehicle number 1 [Prange's car] did fail to yield the right-of-way at the intersection." R. 245.

On cross-examination, Prange's counsel asked Scott the basis for his opinion and Scott stated it was based upon the statements of the three drivers involved, that is, hearsay. R. 246–247. The Record then shows the following:

---

5. For example, Prange's tendered Instruction No. 7 does not set forth standards of conduct. It merely states that a motorist who is stopped, parked, or standing should not be negligent when they move from a stationary position. In other words, the statute makes it an offense to be negligent without defining what constitutes negligence.

Q. (By Prange's Counsel): Is that all you took into account arriving at that conclusion?

A. (Officer Scott): Well, talking with all three drivers involved, sir, is what prompted the conclusion about—

Q. What did the other driver tell you?

A. If I may refer [to the accident report] again, sir?

Q. Sure.

A. Driver 3 [Irvin] says he does not think that vehicle number 1 [Prange] stopped at the stop sign before the initial contact between vehicles 1 [Prange] and 2 [Ekstrand].

Q. So you had Driver 3 in the Martin car saying he did not think Mrs. Prange stopped and you had Mrs. Prange saying she thought she stopped, and you have Mrs. Ekstrand saying she [Prange] didn't stop.

A. Yes, sir.

Q. And was there anything beyond those three statements that you considered at arriving at the conclusion that—Mrs. Prange failed to yield the right-of-way?

A. Well, sir, I do have a witness' name, however [I] did not write down what the witness said and I cannot recall what the witness said and I cannot recall what the witness did say at the time.

Q. Well, then, are we back to these three drivers' statements as the basis for your conclusion?

A. Basically, yes, sir.

Q. All right. And, are those statements of the type that require any special expertise to interpret that you have that this jury doesn't have?

A. Other than the experience that I've had over the years, sir, no.

Q. Pardon me?

A. Other than the experience that I've had doing accidents, no, sir.

Q. Okay. *You didn't rely on any of that—you just relied on the statements?* (Emphasis added).

A. Yes, sir.

R. 247–248. It appears that at this point, Scott was no longer testifying as an expert, but as a lay person. It also is apparent that the opinion given by Scott was not based on his own investigation, but based upon hearsay. As such, the opinion should not have been admitted if Prange's counsel had objected on that basis. However, counsel made no such objection.

■ Our supreme court, in *Wissman v. State* (1989), Ind., 540 N.E.2d 1209, addressed a similar question, i.e., where an expert's conclusion regarding a fact to be determined by the jury was not based on any special expertise. A pathologist was asked to testify about the angle of a gun prior to its discharge and did, even though no special knowledge was required to answer the question. The court noted:

> [E]ven if evidence is not beyond the knowledge and expertise of the average juror, the expert may nevertheless testify concerning his special knowledge of the subject. *Summers v. State* (1986), Ind.App., 495 N.E.2d 799, *reh'g denied, trans. denied.*

*Id.* at 1213. Thus, the general rule that expert testimony on an issue within the common knowledge of the average juror is not admissible is not ironclad. *See, e.g., Beeson v. Christian* (1991), Ind.App., 583 N.E.2d 783; *State v. Bouras* (1981), Ind.App., 423 N.E.2d 741, 745; Fed.Rule of Evid. 704(a); *But see Marks v. Gaskill* (1990), Ind., 563 N.E.2d 1284, 1285 (it is reversible error to allow a police officer to give his opinion as to which motorist involved in an accident was at fault).

In addition, Scott's testimony on direct examination was harmless because the same or similar evidence was admitted without objection. *Matter of Estate of Palamara* (1987), Ind.App., 513 N.E.2d 1223, *reh'g denied; Thomas v. State* (1981), Ind.App., 423 N.E.2d 682, 690. Ekstrand's counsel, also during cross-examination, asked Scott if any of Ekstrand's actions were contributing circumstances. Scott answered he did not record anything on his report with respect to Ekstrand's acts being contributing circumstances. R. 249. We also note that all three of the drivers involved testified and repeated the statements they had given to Scott. Therefore, reversible error did not occur

when the trial court admitted the opinion testimony of Officer Scott.

## III. DAMAGES

 Prange claims the jury's award of $1,325,000 is excessive and is based upon the jury's consideration of an improper element of damages—attorney fees. Prange bases her argument on the following:

> The Court: The jury now sends questions to the court and counsel requesting ... Question 3: Can an amendment be made to the compensation award on the verdict form? Underneath [this is] written: Compensation and Attorney Fees.
>
> Parties agree the answer would be "no." After discussing with the court and the counsel, the plaintiff and defendant Ekstrand object to answering. The court declines to answer and sends written answer in to the jury indicating: 'You must follow the instructions.'
>
> Additionally, the jury requests the court to permit them to view and take into the evidence room a chart of calculations prepared by counsel for the plaintiff in his closing argument. The court returns on the same note to the jury, the answer that the same was not admitted into evidence and cannot be sent to the jury room. ·
>
> Mr. Pankow (Prange's Attorney): And the defendant Prange objects to the refusal to ask [answer?] the three questions for the reason that all parties are agreed on what the answers would be and it would be helpful to the process of the jury in the, ah—and should not require an unanimous consent.

R. 838–839. Prange concludes that the amount of the verdict is a "patent indication the jury disregarded the court's admonition to follow instructions." Prange's Brief at 46. Prange then claims "there exists powerful record evidence and indication the jury ... considered an element of damages it was not permitted to consider...." *Id.* at 47.

The "evidence" Prange cites is the following argument in her Brief:

> Manifest prejudice is reflected in this verdict, which is $432,000 in excess of the amount sought by Martin in [closing] argument—an excess of nearly half the amount requested.
>
> Deducting $432,000 from the verdict of $1,325,000 produces the $893,000 urged by Martin in argument. $432,000 is 32.6% of $1,325,000; nearly the precise one-third contingent fee that is public knowledge.

*Id.* at 48. While these calculations are interesting, counsel's arguments and opinions are not evidence. Neither—as the trial court correctly informed the jury—was the amount suggested by Pamela's counsel, by the use of a chart during closing argument, evidence.

 A jury is presumed to have followed the court's instructions. Damages are particularly a jury determination. Appellate courts will not substitute their idea of a proper damage award for that of the jury. *Irvine v. Mattingly* (1961), Ind.App., 172 N.E.2d 873. Instead, the court will look only to the evidence and inferences therefrom which support the jury's verdict. *Crump v. Rhodes* (1986), Ind.App., 488 N.E.2d 741, *reh'g denied, trans. denied.* We will not deem a verdict to be the result of improper considerations, unless it cannot be explained on any other reasonable ground. *Id.* at 742; *Burris v. Riester* (1987), Ind.App., 506 N.E.2d 484, *reh'g denied, trans. denied.* Thus, if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed. *Id.*

There is evidence in the Record which supports the jury's award. To the date of the trial, Pamela's medical bills totalled $18,-324 and the evidence showed she would continue to incur medical bills for the foreseeable future. She had lost approximately $72,000 in wages, was unable to work, and was considered permanently disabled. She had a remaining life expectancy of 38.7 years. Her average income prior to the accident was between $350 and $400 per week or between $18,200 and $20,800 per year. At a low estimate of $15,000 per year, her lost future wages would be $580,500 and $804,960 at the high end of the range. Allowing for a minimal inflation rate of 2½% per year, the $804,-960 becomes more than $1,300,000 over her expected life span. Her medication was cost-

ing her almost $300 per month or $3600 per year or $139,000 when multiplied by 38.7 years—her life span.

 The jury could also award Pamela a reasonable amount for pain and suffering. Assessing the value of such damages, because it involves the weighing of evidence and credibility of witnesses, is particularly within the jury's discretion. *Amos v. Keplinger* (1979), Ind.App., 397 N.E.2d 1010. The jury is in the best position to award damages for pain and suffering. *Wagner v. Riley* (1986), Ind.App., 499 N.E.2d 1155, *reh'g denied.* It is not our function to reweigh evidence or judge witness credibility. This is the province of the trier of fact—in this case—the jury.

Prange concludes the jury's verdict can only be explained by passion, prejudice, sympathy or consideration of improper elements of damages, e.g., attorney fees. We do not agree. The jury's verdict can be explained as the sum of medical expenses, lost wages and pain and suffering.

Therefore, because we affirm the jury's verdict and the decisions of the trial court, there is no need to address Ekstrand's cross appeal because it would be moot.

HOFFMAN, J., concurring.

STATON, J., dissenting with separate opinion.

STATON, Judge, dissenting.

I dissent for the following reasons:

1. Instruction number 12 contained a crucial misstatement of the law which went to the heart of Prange's only defense.

2. The instructions tendered by Prange were not adequately covered by other instructions that were given to the jury.

3. The contention instruction did not eliminate the issue of whether Ekstrand failed to maintain a proper lookout.

I.

*Instruction No. 12*

Final instruction number 12 states: "A motorist has the right to assume that the other person will obey the law and will exercise due care and reasonable care." Record, p. 124. Prange objected on grounds that this instruction was incomplete because it did not contain the phrase "absent notice to the contrary."

The language that Prange sought to include in instruction number 12 comes directly from an Indiana Court of Appeals decision. In *Brock v. Walton* (1983), Ind.App., 456 N.E.2d 1087, 1092, the court opined that, *"[u]nless a party has notice to the contrary, he has the right to assume others who owe him a duty of reasonable care will exercise such care."* (Emphasis added). As *Brock* and the cases cited in the first footnote of the majority opinion illustrate,[1] the addition sought to be added by Prange is a correct statement of the law. It is *not* the law that, under all circumstances, a motorist has the right to assume the other person will obey the law.

A jury instruction which misstates the law will serve as grounds for reversal when the jury's verdict could have been based on the erroneous instruction. *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 1279, 1281, *reh. denied.* It is assumed that the erroneous instruction influenced the jury's verdict unless it appears from the record that the verdict would not have been different even with a proper instruction. *Id.*

The record reveals there was evidence to support Prange's contention that Ekstrand proximately caused the accident. Ekstrand testified that she proceeded into the intersection even though she saw Prange approaching from fifty feet away at a speed of fifty-five miles per hour. Prange's theory that Ekstrand entered the intersection, despite being on notice that Prange was not slowing down, constituted the only defense available to Prange. By refusing to include the language sought by Prange, the trial court de-

---

1. *Beem v. Steel* (1967), 140 Ind.App. 512, 224 N.E.2d 61; and *Keltner v. Patton* (1933), 204 Ind. 550, 185 N.E. 270.

prived Prange of her only chance for the jury to consider a viable defense. It is clear the jury's verdict could have been based on the erroneous instruction.

The majority attempts to justify the rejection of the language that Prange sought to have included in instruction number 12 because:

> "the word 'notice' is vague and connotes multiple meanings. For instance, does the word 'notice' mean that a motorist may not assume the other will act with reasonable care if the other's negligence is possible? ... likely? ... apparent? ... fully appreciated? Must the 'notice' be from personal observation, or does it include a warning from a third party?"

Op., at 917.

"Notice" is defined in Black's Law Dictionary (4th Ed.) as "information; knowledge of the existence of a fact or state of affairs...." The fact that Prange's tendered addition to instruction number 12 was not specific as to the *means* by which Ekstrand obtained the notice (whether through personal observation, warning from a third-party, etc.) does not render the addition vague. The crucial question is whether Ekstrand *had* such notice or knowledge, not the means by which such knowledge was obtained.

Finally, I disagree with the majority's conclusion that the other instructions given by the trial court adequately covered the substance of Prange's proposed addition to instruction number 12. The instructions to which the majority refers were merely general instructions informing the jury that negligence is the failure to do what a reasonably careful and prudent person would have done under the same circumstances. However, the trial court did not apply the same "general over specific" approach when it gave instructions that were favorable to the plaintiff.

For example, in instruction number ten, the court informed the jury of the existence of a statute requiring that every driver of a vehicle stop at any stop sign before entering an intersection. Record, p. 122. Too, Instruction number 12, discussed *supra*, gave a very specific and fact-sensitive (though incomplete) statement of the law.

In refusing the instructions that correctly stated the law applicable to Prange's only defense, the trial court denied Prange a fair trial. The jury was not able to weigh Prange's theory that Ekstrand negligently proceeded into the intersection despite having notice that it was not safe to do so. The general negligence instructions that were given to the jury failed to adequately cover the facts before it.

## II.

### *Prange's Rejected Instructions*

I further dissent to the Majority's conclusion that Prange waived consideration of her seven tendered instructions because she failed to object to a contention instruction, which the Majority opines is "the law of the case". Our court has found a similar contention instruction to be nonprejudicial where the party who challenged it on appeal had presented evidence consistent with the contentions. *North American Roofing, Co., Inc. v. Westmont Steel, Inc.* (1992), Ind.App., 591 N.E.2d 629, 632–33, *trans. denied.* Here, evidence was presented that was inconsistent with the Majority's interpretation of the contention instruction.

Too, even assuming that a contention instruction can be utilized as the Majority opinion suggests, a close examination of the instruction reveals that Prange made no concessions therein on the issue of whether Ekstrand maintained a proper lookout.

Instruction number two states in pertinent part:

\* \* \* \* \* \*

Defendant Betty Prange denied fault and contends that the fault of Maribeth Ekstrand proximately caused the accident in question in that *Maribeth Ekstrand failed to maintain a reasonable lookout after seeing the Prange vehicle approach and enter into the intersection* at a time such movement could not be made with reasonable safety. As a result, the front of the Ekstrand car struck the left rear of the Prange vehicle, causing it to spin and strike the vehicle in which Plaintiff was a passenger.

Record, pp. 113–14 (emphasis added). It can hardly be said that Prange's contention is an admission that eliminates the issue of whether Ekstrand maintained a lookout.

Because instruction number 12 contained a crucial misstatement of the law and Prange's tendered instructions were rejected in error, I would reverse and remand this cause for a new trial.