Howard Barry **LANDIS**, Appellant–
Defendant,

v.

Eilene Ruth **LANDIS**, Appellee–Plaintiff.

No. 20A03–9508–CV–283.

Court of Appeals of Indiana.

April 22, 1996.

Paul E. Becher, Jacqueline Sells Homann, Barnes & Thornburg, Elkhart, for Appellant.

Edward J. Chester, Chester, Pfaff & Brotherson, Elkhart, for Appellee.

## OPINION

GARRARD, Judge.

Howard Barry Landis (Barry) and Eilene Ruth Landis (Eilene) were married for twenty-eight years. During the marriage they started a woodworking business which they incorporated in 1987 as E & L Associates Woodworking, Inc. (E & L). Each owned 50% of its capital stock, and both served as officers, directors and employees of the corporation. By August, 1992, each was earning in excess of $93,000 per year from E & L.

On August 12, 1992 their marriage was dissolved. As part of a property settlement agreement, each kept their capital stock in E & L, and they informally agreed that each would continue in their jobs there at the same rate of compensation. Just five days later at E & L, Barry erupted into rage at Eilene over the payment of company accounts. This occurred in the presence of other employees, including Barry and Eilene's daughter. Barry called her vile names, belittled her, threatened her and her secretary, and ended up kicking her in the stomach. Thereafter, Barry told people that Eilene was not allowed in the office.

Immediately after this incident Barry threatened to terminate Eilene's income from E & L. He attempted to purchase her stock, but the effort failed because he refused to personally guarantee any obligations. A second attempt also failed, and on November 9, 1993, he sent a note that her income from E & L was being terminated "due to the financial condition of E & L." While Barry testified that the financial condition of E & L was "very bad," the records disclosed that from 1992 until 1994, Barry's annual compensation increased to more than $138,000, his new wife's compensation was increased from about $15,000 to more than $31,000 and the compensation of each of their two children was increased about $15,000 per year. In July, 1993, Barry canceled the company's health insurance policy including Eilene's coverage, and when a new plan was implemented she was excluded.

So Eilene filed suit against Barry claiming damages for assault and battery, intentional interference with a business relationship and intentional infliction of emotional distress. Barry moved to dismiss the complaint upon the ground that exclusive jurisdiction lay with the Worker's Compensation Board. In response, Eilene expressly disclaimed recovery for physical injuries, medical expense, or anything constituting impairment or disability as defined by the Worker's Compensation Act.

On that basis the trial court denied the motion to dismiss and proceeded with trial to a jury. At the close of the evidence, Barry moved for judgment on the evidence again relying upon lack of jurisdiction due to the Worker's Compensation Act. The court denied the motion and subsequently entered judgment on the jury verdict awarding Eilene $2,175,000 compensatory and $50,000 punitive damages.

█ The principal question we are asked to decide is whether Eilene could thus maintain a civil action.[1] The supreme court's

---

1. No challenge is made to the propriety of the claims for interference with a business relationship or infliction of emotional distress or to any of the instructions given by the court. Apart

decision in *Perry v. Stitzer Buick GMC, Inc.,* 637 N.E.2d 1282 (Ind.1994) persuades us that she may.

In *Perry* the court was confronted with an individual's attempt to bring a civil action against his former employer for assault, slander and assault and battery based upon incidents involving numerous racial slurs, a battery and, ultimately, his discharge. The company defended upon the basis that exclusive jurisdiction was under the Worker's Compensation Act.

The court, referring to its contemporaneous decision in *Baker v. Westinghouse Electric Corp.,* 637 N.E.2d 1271 (Ind.1994), concluded that Perry could not maintain his action under the intentional tort exclusion from the Worker's Compensation Act. because the evidence failed to link the conduct of the offending Stitzer managers to the corporate entity. 637 N.E.2d at 1287. That same analysis precluded Eilene from maintaining the present action under the intentional tort exclusion. For while she was attempting to sue her former co-employee, Barry, rather than the corporation, he was nevertheless within the ambit of the exclusive remedy provisions of IC 22–3–2–6 and 13 if her claim was covered by the Act.

The court then proceeded, however, to determine that because "the injuries at the heart of Perry's complaint were not physical, nor was there any impairment or disability as those terms are comprehended by the [Worker's Compensation] act" he was entitled to maintain his action. As in *Perry,* the heart of Eilene's claim was not physical nor did she claim either impairment or disability within the meaning of the Act as defined by the court in *Perry. See* 637 N.E.2d at 1288. Indeed, she expressly disclaimed any recovery whatever for any injury covered by the Act. The effect would have been necessarily the same upon the remand in *Perry.* Thus, upon the holding in *Perry,* we conclude that Eilene was entitled to maintain her civil tort action to recover for the injury done her that did not constitute personal injury within the meaning of the Worker's Compensation Act,

and the trial court properly had jurisdiction of the case.

■ Barry additionally claims the jury's award of compensatory damages in Eilene's favor is excessive as a matter of law.[2] The jury awarded Eilene compensatory damages in gross in the sum of $2,125,000. Nevertheless, Barry attacks the time period for which the jury apparently awarded Eilene damages for lost wages and benefits as being unreasonable. Moreover, he argues that the damages on account of pain, suffering and emotional distress are excessive.

■■ In reviewing a claim that an award of damages is excessive, we will reverse a jury verdict only when it is apparent from a review of the evidence concerning the injuries that the amount of damages assessed by the jury is so great as to indicate that the jury was motivated by prejudice, passion, partiality, or corruption, or considered some improper element. *Lazarus Dept. Store v. Sutherlin,* 544 N.E.2d 513, 525–26 (Ind.Ct. App.1989), *reh'g denied, trans. denied.* Moreover, appellate courts must not substitute their idea of a proper damage award for that of the jury. *Prange v. Martin,* 629 N.E.2d 915, 922 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* Instead, we look only to the evidence and inferences therefrom which support the jury's verdict. Thus, if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed. *Id.*

In denying Barry's motion to correct errors, the trial court summarized the evidence supporting the jury's compensatory damage award as follows:

[T]he defendant effectively drove Plaintiff from her employment by a corporation which they owned in 50% shares each and which was paying her, as an executive, a salary of $91,000 per year, health care insurance benefits of $3,000 per year and a Social Security contribution in the maximum amount (of more than $4,000), for a

---

from the jurisdictional question and the amount of the damage award we accept these claims as properly decided.

**2.** Barry does not challenge the punitive damage award of $50,000.00.

total of $98,000, or more. She had been a highly paid functioning corporate officer for many years there, as was the defendant, who was the corporate president. He physically and verbally drove her out one day, with no corporate authority to do so, called her foul names, unspeakable in polite society, in front of the office employees, kicked her in the stomach, and threatened to kill her if she ever returned. She was then 46 years old and reasonably could have remained employed for 20 years or so at a good and increasingly high salary, based on the history of the corporation, which the parties founded, nurtured, and caused to become prosperous. After being driven away, she did a large part of her corporate duties at home, but that arrangement became progressively more unsatisfactory, and she quit doing the work, and about a year later, again without formal corporate authority, the defendant cut off completely her large salary.

Additionally, she suffered humiliation and emotional injuries, though no physical injury other than pain.

Record at 419–20.

Barry first claims that the jury may have awarded Eilene as much as $1,587,800 for lost salary and benefits. Barry arrives at this figure by multiplying $93,400 per year by the seventeen years left before Eilene's retirement. Barry argues that an award for future salary and benefits for more than five years is excessive as a matter of law. Barry supports his argument with case law involving wrongful discharge which found between three and four years to be reasonable periods of time for prospective employment. *Haas Carriage, Inc. v. Berna,* 651 N.E.2d 284, 290 (Ind.Ct.App.1995) (finding three years, ten weeks to be reasonable period of time for compensation due to wrongful discharge); *Remington Freight Lines v. Larkey,* 644 N.E.2d 931, 942 (Ind.Ct.App.1994) (holding that period of three years and nine months of prospective employment was not unreasonable). Both cases cited by Barry state that the task of determining a reasonable time for calculating wages is left to the fact-finder. *Id.*

Assuming that the jury awarded Eilene salary and benefits for seventeen years, we are not persuaded that the jury abused its discretion. Unlike the at-will employees in *Haas* and *Remington,* Eilene held an ownership position with E & L which made her continued employment there more probable. Additionally, the cases cited by Barry affirm the finding of the fact-finder regarding a reasonable time period and do not determine what time period would be excessive. Finally, we note that this court affirmed a jury verdict awarding $1,325,000 after estimating the plaintiff's future earnings over her remaining life expectancy of 38.7 years. *Prange v. Martin,* 629 N.E.2d at 922. We therefore conclude that if the jury here awarded Eilene salary and benefits for a seventeen year period, Barry has not shown the award to be outside the jury's discretion.

■ Barry contends that at least $537,200 of the general jury verdict is attributed to damages for pain, suffering and emotional distress. He also claims that this amount exceeds the bounds of reasonableness.

■ Awards for pain, suffering, fright, humiliation and mental anguish are particularly within the province of the jury because they involve the weighing of evidence and credibility of witnesses. *Prange v. Martin,* 629 N.E.2d at 923; *Lazarus Dept. Store v. Sutherlin,* 544 N.E.2d at 526. Moreover, a jury is afforded great latitude in determining this kind of damages. The jury's discretion, however, is not limitless. *Groves v. First Nat. Bank of Valparaiso,* 518 N.E.2d 819, 831 (Ind.Ct.App.1988), *reh'g denied, trans. denied.* Thus, where the damage award is so outrageous as to indicate the jury was motivated by passion, prejudice, partiality, or the consideration of improper evidence, we will find the award excessive. *Id.*

The damage award here is not so outrageous as to indicate passion, prejudice, partiality or the consideration of improper evidence on the part of the jury. Unlike the plaintiff in *Groves,* Eilene presented evidence that she suffered from observable indicia of emotional distress caused by Barry's actions on August 17, 1992. We note that the trial court specifically instructed the jury that its verdict must be based upon the evidence and

not on guess or speculation. The trial court also instructed the jury to limit its award to damages resulting from the August 17, 1992 incident only. Additionally, the trial court told the jury not to be influenced by passion, prejudice or sympathy for one side or the other. Finally, the jury was instructed that it could not set a value on the share of stock and that it could not award damages based upon the value of stock. A jury is presumed to have followed the court's instructions. *Prange v. Martin*, 629 N.E.2d at 922. Barry's argument that the jury's award of compensatory damages was excessive is not persuasive.

Judgment is Affirmed.

HOFFMAN and SHARPNACK, JJ., concur.