Robert and Wana McCREARY,
Plaintiffs-Appellants,

v.

LIBBEY–OWENS–FORD CO.,
Defendant–Appellee.

No. 97–1571.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1997.

Decided Dec. 18, 1997.

Rehearing Denied Feb. 6, 1998.

Christopher Cross (argued), Vernon J. Petri, Indianapolis, IN, for Plaintiffs–Appellants.

Michael D. Marine (argued), Kelly A. Evans, Ice, Miller, Donadio & Ryan, Indianapolis, IN, for Defendant–Appellee.

Before CUDAHY, KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Robert McCreary injured his back and subsequently experienced problems performing his job at Libbey–Owens–Ford Co. ("LOF"). LOF terminated McCreary's employment after he falsified his time sheet. McCreary brings this suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, alleging that LOF failed to accommodate his disability and discharged him because of his disability. He also brings a claim for intentional infliction of emotional distress, and Wana McCreary brings a claim for loss of consortium. The magistrate judge granted summary judgment on all counts in favor of LOF. We affirm in part and reverse in part.

## I. HISTORY

Because the district court granted summary judgment to LOF, we recite the facts in the light most favorable to McCreary. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). LOF hired McCreary in 1991 to work as a production team member in the soldering department of its glass fabrication plant in Shelbyville, Indiana. McCreary's job summary stated, "Team member is responsible to see that leads are properly soldered on backlites, tested and packed for shipping. Other duties require taping, scratch polishing and forklift operations." Harding Dep. Ex. 10. McCreary and the other members of his team performed these duties in three different areas of the soldering department: the production line, the taping tables, and the table stations. All three areas require the team member to lift, bend, and twist. Because of McCreary's height (six feet, four inches), he had to bend and twist considerably when working in the soldering department.

On January 11, 1993, McCreary twisted his knee in the parking lot at LOF. While McCreary was recovering from this injury, LOF assigned him to the quality control department and to office work. During his recuperative period, McCreary would some-times attend physical therapy and physician appointments during work hours, and he would mark his attendance card for full shifts even when he left early for such appointments. LOF was aware of this practice but never disciplined McCreary for it. McCreary returned to work in the soldering department.

On July 7, 1993, McCreary suffered a back injury while at work. The next day, McCreary saw a physician who diagnosed his injury as a "lumbosacral strain" and placed him on the following work restrictions: "Light work with no lifts greater than 20 pounds, no strenuous pushing/pulling bending until 7–12–93." The physician also placed McCreary on pain medication and instructed him to ice and exercise his back daily.

McCreary returned to work later that day and gave his doctor's report to Sandra Kuhn, LOF's occupational health nurse. Kuhn took this report to McCreary's acting team leader, Chris Storey, and together they determined that the taping position in the soldering department did not violate McCreary's work restrictions.

Later, McCreary's supervisor, Jim Harding, found out about McCreary's work restrictions. He called McCreary into his office and confronted him, pointing his finger into McCreary's face and with a raised voice saying, "[t]his is a bunch of bullshit." Harding then told McCreary, "Either go back on the line or go home and you're not getting paid for it." McCreary returned to the soldering department.

On July 12, 1993, McCreary had a follow-up visit with his physician, who diagnosed his injury as "lumbosacral strain superimposed upon lumbar spondylosis-L5S1." The physician instructed McCreary to continue physical therapy and wrote out work restrictions as follows: "Continue same work restrictions with no lifts over 20 lbs. and no frequent bending, twisting or strenuous pushing, pulling." McCreary gave his physician's report to Kuhn after returning to work. Later, McCreary's physician diagnosed him as also having "degenerative L5–S1 disk with Vacuum Sign" and "Sciatica."

McCreary continued to work in the soldering department. McCreary informed his physical therapist that this work was aggravating his back injury. The physical therapist relayed this information to Kuhn, who relayed it to David Barchick, LOF's Human Resource Manager, on August 16, 1993.

McCreary also told John Bishop, LOF's safety specialist, that none of the work in the soldering department was within his work restrictions and requested that he be allowed to work in the quality control department. Bishop said he would check into the situation, but that McCreary should consult Harding and follow Harding's instructions as to where to work. Bishop later told McCreary that he could not work elsewhere because LOF needed work done in the soldering department. LOF only allowed McCreary to work in quality control when the soldering department ran out of tape or parts.

McCreary has testified that none of the jobs in the soldering department met his work restrictions or could have been modified to meet his restrictions. McCreary continued to work in the soldering department, despite the pain and the aggravation to his injury because his family needed his income.

On August 18, 1993, the battery in McCreary's back pain management device (called a TENS unit) died, placing McCreary in great pain. McCreary asked Steve Koch, a team leader in quality control, if he could leave to replace the battery, and Koch gave him permission to do so. McCreary also told Bishop and Storey that the battery had died and that he needed to leave to replace it. McCreary then left work around 5:00 p.m., but signed himself out as leaving at 7:00 p.m., when his shift was supposed to end. On his way out, McCreary waved goodbye to Tracy Moser, LOF's human resource specialist.

Moser, thinking it strange that McCreary had left work before the end of his shift, reported McCreary's departure to Barchick, the human resources manager. Barchick, with the help of Bradley Lewis, LOF's production manager, began to investigate McCreary's early departure. On August 25, 1993, Barchick held a meeting with McCreary and memorialized the meeting in a memorandum:

I met with Rob McCreary in my office on Wednesday, August 25th to follow up on a meeting he had with Brad Lewis on Monday, August 23rd. Here is a recap of the conversation.

I had presented Rob with the fact that Brad had checked Community Hospital and they said they had no record of his coming in to pick up clips for his tens unit.

Rob initially stated that he went to Community Hospital but did not see his therapist. I told him Brad had also checked at the desk and they had no record of his coming to the hospital.

Rob then said he had gotten to the hospital too late and it was closed, so he went home.

I then challenged Rob on his inconsistencies and told him if he had any interest in saving his job, he needed to be totally honest with me.

I then said, "You really did not go to the hospital did you?" Rob started to cry and said "No."

He said he was in pain and just needed to get away from work. He also said ["]I understand the consequences of being dishonest.["]

I told Rob I was going to keep him on suspension until I could present Jim Harding and Brad Lewis with the new facts.

I later spoke with both Jim and Brad. Rob will be terminated for intentional falsification of his time sheet and dishonesty.

Barchick Dep. Ex. 2.

McCreary admitted in his deposition that he knew he was required to document his arrivals and departures from the plant, regardless of the reasons therefor; that LOF had trained him on how to properly fill out his time sheet; and that he knew that dishonesty could result in his termination.

LOF discharged McCreary the next day, August 26, 1993. On August 27, 1993, Maria Worland, LOF's benefits administrator, held an exit interview with McCreary during which she filled out an Exit Interview Questionnaire. Under "Reasons for Leaving" Worland wrote, "falsifing [sic] time sheet (due to back injury)." Barchick Dep. Ex. 35.

Worland testified that the notation "(due to back injury)":

> was simply my note concerning Robert McCreary's stated reasons for leaving the LOF premises on the day at issue.... I did not write "(due to back injury)" because Robert McCreary was being terminated due to his back injury. To the contrary, when I completed Robert McCreary's "Exit Interview Questionnaire" my understanding of the reasons for his termination was that he had falsified his time sheet.

Worland Aff. ¶¶ 11–12.

When Barchick was asked in his deposition why LOF terminated McCreary, he stated:

> He had falsified his time sheet. He left the premises without permission and then when we tried to verify the whereabouts, his story did not check out. He basically fabricated his story about going to the doctor or physical therapy when in fact he had gone home, and we felt based on those situations, especially the fact that all of those are grounds for immediate dismissal, we didn't have any other choice but to let him go, so we terminated him.

Barchick Dep. at 104–05.

McCreary applied for disability benefits with the Social Security Administration. On December 16, McCreary filed a Disability Report in support of his application, in which he stated:

1. When did your condition first bother you: July 7, 1993.

3(a). When did your condition finally make you stop working? August 26, 1993.

3(b). Explain how your condition now keeps you from working. I can no-longer stand for no-more than one half hour to three quarter hour, no-longer sit more than one half [h]our, walking is slow and painful, no longer lift over 10# while bending over, driving or riding in the car is extremely uncomfortable and has limited me to traveling only short distances, and no-longer sleep any longer than 2–3 hours without medication.

McCreary Dep. Ex. M. McCreary certified that the answers he gave in his report were true.

On January 4, 1994, McCreary again applied for disability benefits. In this application he stated, "I became unable to work because of my disabling condition on August 26, 1993. I am still disabled." McCreary also certified that the information he gave in this application was true.

On June 30, 1995, Robert and Wana McCreary filed their complaint against LOF, alleging that firing McCreary and failing to accommodate his disability violated the ADA, constituted intentional infliction of emotional distress, and caused loss of consortium to Wana McCreary. The district court granted summary judgment for LOF on all claims.

## II. Analysis

McCreary makes several arguments to this Court. As to the ADA, he first argues that he is not precluded from bringing an ADA claim just because he certified to the Social Security Administration that he is unable to work. Second, he argues that LOF denied him the reasonable accommodation of reassignment to the less strenuous quality control department, which is the only accommodation that would allow him to continue working for LOF. Third, he argues that LOF discharged him because of his disability.

McCreary also claims that LOF intentionally inflicted emotional distress upon him by berating him and forcing him to continue working in the soldering department where the work exacerbated his back injury. Lastly, his wife Wana argues that she suffered a loss of consortium.

### A. Standard of Review

We review a district court's decision to grant summary judgment de novo, drawing our own conclusions of law and fact from the record before us. See Thiele v. Norfolk & Western Ry. Co., 68 F.3d 179, 181 (7th Cir. 1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1162 (7th Cir. 1994) (citing *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993)). However, neither "the mere existence of *some* alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.

### B. ADA Claims

#### 1. Social Security Application

■ LOF argues that McCreary is estopped from claiming that he is qualified for the job because he twice averred on his application for Social Security benefits that he is unable to work. LOF asserts that one cannot simultaneously be unable to work and able to perform the essential functions of a job. While as a matter of semantics the proposition could have merit, as a matter of Seventh Circuit law it does not.

■ The ADA protects qualified individuals with disabilities from employment discrimination on account of the disability. "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual...." 42 U.S.C. § 12112(a). Only a "qualified individual with a disability" enjoys the protection of the ADA. The plaintiff bears the burden of placing himself within the confines of the statute by at least creating a genuine issue of material fact as to whether he is a "qualified individual with a disability." *See Sieberns v.*

*Wal–Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir.1997).

A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). LOF argues that one who is unable to work cannot perform the essential functions of any job, and therefore cannot be a "qualified individual with a disability." Likewise, one who has certified that he is unable to work should not be able to say in another context that he can perform the essential functions of a job. However, after the district court granted summary judgment in McCreary's case, this Court decided in a different case that on applications for Social Security disability benefits, certification of total disability does not completely bar the argument that one is a qualified individual with a disability.

■ In that case, *Weigel v. Target Stores*, 122 F.3d 461 (7th Cir.1997), the plaintiff sued her former employer alleging violations of the ADA. After her termination, she applied for Social Security disability benefits, certifying that she was unable to work. *See id.* at 463. Her former employer argued that she could not represent to the Social Security Administration that she was unable to work and argue simultaneously that she is a "qualified individual with a disability." *Id.* We held that "because the [Social Security Administration's] definition of disability—as well as those of most disability insurance plans—differs materially from the ADA's definition of a 'qualified individual with a disability,' these representations are not conclusive as to the ADA issue." *Id.* at 466. However, a plaintiff's representations to the Social Security Administration are not irrelevant; they are some evidence of the plaintiff's ability to perform the essential functions of a job. *See id.* at 467–68. In order to establish a genuine issue of material fact, the plaintiff must come forward with evidence other than the representations to the Social Security Administration that tends to show that the plaintiff can, with or without a rea-

sonable accommodation, perform the essential functions of the job. *See id.*

Here, McCreary admits that he cannot perform the essential functions of his former job, even with modifications to decrease the amount of bending, twisting, and lifting. However, McCreary argues that he can perform the essential functions of his job if LOF affords him the reasonable accommodation of reassignment to the quality control department. *See* 42 U.S.C. § 12111(9)(B) (listing reassignment as a possible reasonable accommodation). He demonstrates that he is qualified for a position in quality control by his testimony that he has worked in that department before to the apparent satisfaction of his employer. Taking these facts in the light most favorable to McCreary, we find that he has shown a genuine issue of material fact as to whether he can perform the essential functions of the job with a reasonable accommodation. Thus, he has shown a genuine issue of material fact as to whether he is a qualified individual with a disability.

2. Accommodation by Reassignment

McCreary argues that LOF discriminated against him in violation of the ADA by failing to afford him a reasonable accommodation, namely a permanent reassignment to the quality control department. LOF responds that McCreary has not pointed to a vacancy in that department, thus failing to meet his burden of producing evidence sufficient to prevent summary judgment. We agree with LOF.

The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "The term 'reasonable accommodation' may include ... reassignment to a *vacant* position...." 42 U.S.C. § 12111(9) (emphasis added).

This Court has previously marked the boundaries of the employer's obligation to provide a reasonable accommodation by reassignment to a vacant position. In *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir.1996), we held that the ADA requires reassignment to a vacant position when the employee is no longer able to perform the essential functions of her employment, even with a reasonable accommodation, and the employee is qualified for the vacant position. We circumscribed the employer's obligation to reassign a disabled employee, however. An employer need only provide a reasonable accommodation, not necessarily the accommodation the employee requests. *See id.* at 499. An employer is not obligated to "bump" another employee in order to create a vacancy for the disabled employee. *See id.* And the employer does not have to create a new position for the disabled employee. *See id.*

The plaintiff bears the burden of showing that a vacant position exists and that the plaintiff is qualified for that position. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997); *Mengine v. Runyon*, 114 F.3d 415, 419 (3d Cir.1997); *Miller v. Department of Corrections of the State of Illinois*, 916 F.Supp. 863, 870 (C.D.Ill.1996), *aff'd*, 107 F.3d 483 (7th Cir.1997). Here McCreary needed to show that a vacant position in quality control was available at the time LOF fired him. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir.1996) (holding that the relevant time is the time of the employment decision). He has not done so.

McCreary has not put forth any evidence that a vacant position in quality control was available. Rather, he testified that he sometimes worked in the quality control department but only when there was no work in the soldering department for some reason. This is insufficient. Occasional opportunities to work in another department are not equivalent to a vacancy for a permanent position. Pointing to a current vacancy is required because "Congress did not intend that other employees lose their positions in order to accommodate a disabled coworker." *Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041, 1047 (7th Cir.1996), *cert. denied*, —— U.S.

——, 117 S.Ct. 1318, 137 L.Ed.2d 480 (1997). McCreary has not identified a genuine issue of material fact regarding the possibility of reassignment. As such, the district court properly granted summary judgment on the reasonable accommodation claim.

### 3. Discriminatory Discharge.

McCreary argues that LOF discharged him because of his disability. He has chosen the indirect, burden shifting approach of *McDonnell Douglas* to attempt to prove discrimination. A plaintiff who uses this approach must make out a prima facie case consisting of three elements: "(1) he is a member of a protected class; (2) his work performance met the employer's legitimate job expectations; [and] (3) his employment was terminated.". *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir.1995) (approving *McDonnell Douglas* approach for ADA cases). *DeLuca*, being a reduction-in-force case, also required the plaintiff to show that other employees not in the protected class were treated more favorably. *See id.* However, we have not required this approach in cases outside the reduction-in-force context. *See, e.g., Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 793 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997). If the plaintiff successfully establishes the elements of the prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for discharging the plaintiff. If the employer can articulate such a reason, the burden returns to the plaintiff to show that the employer's proffered reason is a mere pretext for discriminatory action. *See DeLuca*, 53 F.3d at 797.

The district court held that McCreary has not created a genuine issue of material fact as to the first element of the prima facie case, being a member of the protected class, because he certified to the Social Security Administration that he is unable to work. Because it made that determination, the district court did not address McCreary's discriminatory discharge claim further. Because we have determined that McCreary is not estopped from asserting that he is a qualified individual with a disability, and because McCreary raised a genuine issue of material fact as to that element, we vacate the district court's decision granting summary judgment to LOF and remand this issue for further proceedings. We express no opinion on the merits of LOF's motion for summary judgment as to discriminatory discharge except to say that McCreary has pointed to a genuine issue of material fact as to the element of being a member of the protected class.

### C. Intentional Infliction of Emotional Distress

McCreary argues that LOF intentionally inflicted emotional distress on him when his supervisor berated him and when LOF refused to reassign him to the quality control department. The district court granted summary judgment for LOF. We agree.

#### 1. Subject Matter Jurisdiction

LOF makes a preliminary challenge to McCreary's claim for intentional infliction of emotional distress. LOF argues that the exclusivity provision of the Indiana Worker's Compensation Act, Ind.Code § 22–3–2–6, would deny subject matter jurisdiction to an Indiana court to hear McCreary's claim for intentional infliction of emotional distress, thereby also denying supplemental jurisdiction to the federal court. The district court decided that the Worker's Compensation Act would not strip its subject matter jurisdiction to entertain an action for intentional infliction of emotional distress where the plaintiff does not seek damages for physical injuries. We agree. *See Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1288 (Ind.1994) (allowing employee to sue employer for non-physical injuries); *Landis v. Landis*, 664 N.E.2d 754, 755–56 (Ind.Ct.App.1996) (allowing employee to sue employer for intentional infliction of emotional distress).

#### 2. Merits

The tort of intentional infliction of emotional distress is fairly young in Indiana. In *Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991), the Supreme Court of Indiana recognized the tort for the first time. The Supreme Court defined that tort as follows: "[O]ne who by extreme and outrageous con-

duct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Id.* at 31 (quoting Restatement (Second) of Torts § 46 (1965)). Furthermore, "[i]t is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress." *Cullison,* 570 N.E.2d at 31.

Indiana courts have been reluctant to award damages for intentional infliction of emotional distress in employment cases. McCreary relies on *Landis,* 664 N.E.2d at 754, for the proposition that yelling at an employee can be the basis of a claim for intentional infliction of emotional distress. This reliance is misplaced. In *Landis,* former spouses and business co-owners continued to run their business together after their marriage ended. Following a series of disagreements, the former husband "erupted into rage" at his former wife in front of their daughter and employees. He called her names, belittled her, threatened her life, kicked her in the stomach, told the employees that she was no longer allowed in the office, and threatened her secretary's life. *See id.* at 755. The appellate court upheld an award of damages for intentional infliction of emotional distress.

 McCreary's case is a far cry from the situation in Landis, even taking the facts in the light most favorable to him. Assuming Harding did yell at McCreary, it appears to be an isolated and brief incident which took place out of the presence of others. And refusing to reassign him to quality control is not the sort of "extreme and outrageous conduct," *Cullison,* 570 N.E.2d at 31, the Indiana Supreme Court had in mind when it adopted the tort. Because we are merely predicting what an Indiana court would do with McCreary's claim, it is not our place to expand the tort of intentional infliction of emotional distress further than the Indiana courts have already done. *See Comfax Corp. v. North American Van Lines, Inc.,* 587 N.E.2d 118, 127–28 (Ind.Ct.App.1992) (noting the Indiana Supreme Court's "long-standing reluctance to recognize the tort of intentional infliction of emotional distress in this state, and its only recent recognition of this tort

... in very limited circumstances"). We affirm the decision of the district court to grant summary judgment to LOF on the intentional infliction of emotional distress count.

### D. Loss of Consortium

 "[A] claim for loss of consortium is derivative in nature and its viability depends upon the validity of the injured spouse's claims." *Watters v. Dinn,* 666 N.E.2d 433, 438 (Ind.Ct.App.1996). Because we remand this case for further proceedings as to discriminatory discharge, we also remand Wana's claim for loss of consortium.

For the reasons stated above the district court's decision with respect to reasonable accommodation and intentional infliction of emotional distress is AFFIRMED. The district court's decision with respect to estoppel by filing for Social Security benefits and loss of consortium is REVERSED, and its grant of summary judgment on the discriminatory discharge claim is VACATED. We REMAND this cause for further proceedings consistent with this opinion.