**Charles W. HAGA, Plaintiff,**

v.

**HEATCRAFT INC., a Corporation, Defendant.**

No. 96–CV–2173.

United States District Court, C.D. Illinois, Danville/Urbana Division.

July 22, 1998.

Kenneth W. Blan, Jr., Blan Law Offices, Danville, IL, for Plaintiff.

Elizabeth A. Knight, Patrick J. Fanning, Edward R. Tomkowiak, Knight, Hoppe, Fanning & Knight, Ltd., Des Plaines, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

MCCUSKEY, District Judge.

Plaintiff, Charles W. Haga, filed a two-count complaint against Defendant, Heatcraft Inc. In count I, Plaintiff alleged that Defendant violated the Americans with Disabilities Act (ADA) (42 U.S.C. §§ 12101 *et seq.*) when it failed to make reasonable accommodations for him. In count II, a pendent state law claim, Plaintiff alleged that Defendant retaliated against him for pursuing his rights under the Illinois Worker's Compensation Act. This matter is before the Court on Defendant's Motion for Summary Judgment (# 42). After reviewing the entire record, Defendant's Motion for Summary Judgment (# 42) is GRANTED.

### FACTS

The Motion for Summary Judgment is directed solely to Plaintiff's ADA claim. In support of its Motion, Defendant attached the transcripts of Plaintiff's deposition and the deposition of his treating physician, Dr. David J. Fletcher. In addition, Defendant included its collective bargaining agreement, the decisions of an Arbitrator of the Illinois Industrial Commission and the affidavit of Jeffrey Hutton. These documents establish the following facts.

Plaintiff has a high school education and started working for Defendant shortly after his graduation in 1984. Defendant has a collective bargaining agreement with its employees which contains provisions regarding the assignment of employees to jobs. On September 28, 1993, Plaintiff was working as an expander/operator and suffered an injury to his right shoulder. At that time, he was earning approximately $20,800 per year, and his average weekly wage was $400. Plaintiff worked in Defendant's transitional work area (TWA) until he had surgery on his shoulder on January 27, 1994. He returned to light

duty work in the TWA on February 21, 1994. The TWA is a temporary work program for employees needing time to recuperate and return to their original job classification. The maximum time an employee can spend in the TWA is 26 weeks under Defendant's current collective bargaining agreement. In March 1994, Plaintiff began to experience problems with his left shoulder. He continued working in the TWA until May 20, 1994, when he was released to full duty work. Plaintiff worked through the summer as an expander/operator. However, the problems with his shoulders continued.

On September 29, 1994, Plaintiff went to see Dr. Fletcher. Dr. Fletcher found that Plaintiff had problems with both shoulders and early carpal tunnel syndrome. On December 9, 1994, Dr. Fletcher determined Plaintiff was capable of working with restrictions. Plaintiff bid on a temporary forklift job and began working in that position on December 12, 1994. According to Defendant, the actual job title for this position is power truck/material handler. Plaintiff was able to perform the temporary forklift job. After the permanent employee in that position returned to work following surgery, Plaintiff was placed in a production job around January 20, 1995. He was unable to perform the functions of this job and stopped working on January 23, 1995. Subsequently, Judy Block came back to work following a layoff and was returned to the position of power truck/material handler.

Plaintiff continued to see Dr. Fletcher who noted improvement in Plaintiff's condition while he was not working. Dr. Fletcher testified that, as of November 9, 1995, Plaintiff had reached maximum medical improvement and could resume work with restrictions. The permanent restrictions imposed by the doctor were: no constant climbing or ladders; no lifting over 50 pounds; minimal overhead activities; and avoidance of repetitive tasks. On January 15, 1996, Plaintiff returned to work and was placed in the job of tube fabricator. Plaintiff determined he could not do that job and stopped working on January 29, 1996. He was put on layoff status at the end of his shift that day. Defendant said it did not have a position which would accommodate Plaintiff's restrictions. Throughout 1996, Defendant sent Plaintiff several letters confirming that it did not have any positions available within Plaintiff's work restrictions. Defendant requested immediate notification if Plaintiff's work restrictions changed in any way.

Plaintiff obtained employment at Custom Care Laundromat in April 1996. He was still employed there at the time of his deposition, August 14, 1997. Plaintiff earns $500 per week in salary. On September 3, 1996, an Arbitrator with the Illinois Industrial Commission awarded him worker's compensation benefits. In the memorandum of decision, the Arbitrator determined Plaintiff was capable of performing the work of a tube fabricator in January 1995. The Arbitrator noted that the essential physical requirements of the job do not mandate overhead activities and do not require lifting over 40 pounds. The Arbitrator also relied upon videotape evidence presented at the hearing. A videotape of Plaintiff taken on May 3, 1995, and May 4, 1995, showed Plaintiff working at Custom Care Laundromat, carrying a tool box, opening the hood of a truck with both arms, holding the hood open with his right arm to pour oil into the vehicle, mowing his yard and using a gas powered "weed eater." A tape taken on May 1, 1996, and May 2, 1996, showed Plaintiff throwing an electrical cord onto a roof, throwing shingles off of a roof, picking up items from a roof, placing and attaching shingles to a roof, tarring a roof, climbing, walking, bending and operating air powered tools.

Plaintiff testified during his deposition that he is incapable of performing the job of expander/operator or the requirements of tube fabricator in department 07 because of his current work restrictions. He said the job of tube fabricator would require repetitive motions with his hands and arms. Plaintiff stated that he did not know of any accommodations Defendant could make so he could perform the job of tube fabricator. Plaintiff testified he could perform a forklift job, as well as a job in shipping and receiving, or work as a lead man. He said the forklift position and the shipping and receiving job were bid positions under the terms of the collective bargaining agreement. He stated that employees were appointed by tile fore-

man to the lead man position. Plaintiff has not bid on any of these jobs. Plaintiff said his work restrictions are permanent and have not changed in any way.

Jeffrey Hutton, Defendant's Safety Coordinator, said in his affidavit that the job of power truck/material handler has changed since 1995. He stated that the position now requires "maneuvering, backwards driving, repetitive mounting and dismounting of the truck, above shoulder level work, repetitive use of the upper extremities and use of hand tools." Hutton said that none of these positions would be within Plaintiff's current restrictions. Hutton also stated that the position of shipping/warehouse clerk requires "repetitive movement of the upper extremities in excess of 1,200 repetitions each day; ability to use a utility knife, banding tools and a hand truck/cart, all of which require full use of the upper extremities." Hutton stated that the position of shipping warehouse clerk was not within Plaintiff's medical restrictions. In addition, he said Defendant requires its Lead Persons to "be fully able to perform each and every essential job function for each job in the department." Accordingly, Defendant determined Plaintiff was medically restricted from performing this job. Hutton also stated that Judy Block held the job of power truck/material handler since 1991 and had seniority over Plaintiff for that position.

Plaintiff filed a response to Defendant's Motion for Summary Judgment. Plaintiff attached 70 documents he received from Defendant which detailed the physical requirements for various positions in Defendant's plant. In addition, Plaintiff attached the affidavit of Robert Devore, the president of the local union which represents Defendant's employees. Devore identified 10 positions within Plaintiff's work restrictions, based upon the documents submitted by Defendant. Devore stated that two jobs, namely, coil test and tube fabricator in department 41, are currently up for bid and are within Plaintiff's work restrictions. He also said the positions of assembler, brazer-assembly and assembly tester are within Plaintiff's work restrictions. He noted that the jobs are held by new hires.

Plaintiff also attached the deposition of Ray Piatt, Defendant's coil manager, and Terry Drews, Defendant's business unit manager for unit coolers. Piatt said the job of driving a forklift has been consolidated with the position of material handler. He noted the job does not involve merely driving a forklift but also requires lifting, moving and delivering. Piatt stated that Defendant does not have any employees whose only job requirement is operating a forklift. He also said the position of tube fabricator was an "easy job" and does not require the upper body strength involved in many other jobs. Both Piatt and Drews testified they had discussions with Hutton regarding jobs Plaintiff could do within his work restrictions. Drews testified he had no positions Plaintiff could perform.

## ANALYSIS

### I. ADA

The ADA provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

To comply, employers must make "reasonable accommodations" to the known physical or mental limitations of an otherwise qualified individual. 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodation may include job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, or similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii). However, accommodations are not required when they would impose an undue hardship on an employer. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a). "Qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To establish an ADA claim, a plaintiff has the burden of showing that he is

such a "qualified individual." *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 911 (7th Cir.1996).

## II. Summary Judgment

Defendant argues it is entitled to summary judgment because Plaintiff cannot establish he is disabled within the meaning of the ADA and, alternatively, because Plaintiff is not a qualified individual within the meaning of the ADA. Defendant contends it has no positions available for which Plaintiff is qualified. Defendant also notes it is bound by the terms of the collective bargaining agreement and is "unable to unilaterally transfer the Plaintiff into a position that he is not qualified for, has not submitted a bid for, or for which the Plaintiff lacks adequate seniority."

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate when the record reveals that no reasonable jury could conclude Plaintiff was treated in a statutorily discriminatory fashion. *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1402 (7th Cir.1996). Neither the mere existence of some factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment. *McCreary v. Libbey–Owens–Ford Co.*, 132 F.3d 1159, 1164 (7th Cir.1997).

█ In the case at hand, the court concludes that summary judgment is appropriate because Plaintiff did not meet his burden to show he is a "qualified individual with a disability." Plaintiff was working as an expander/operator. Later, after his injury, he was temporarily assigned to the TWA. Following his release to full duty, Plaintiff said he had problems performing the expander/operator job. Thereafter, Plaintiff was off work for a lengthy period of time. Later, Plaintiff was accommodated and placed in a position as tube fabricator. He testified that he is unable to perform either the expander/operator job or the tube fabricator job.

Consequently, it is undisputed that Plaintiff cannot perform either of these positions without accommodation. See *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 674 (7th Cir.1998). Plaintiff has proposed no accommodation which would permit him to perform either of these jobs. See *DePaoli*, 140 F.3d at 674. In fact, Plaintiff testified that he knew of *no* accommodation which would allow him to perform the position of tube fabricator.

█ What Plaintiff is asking Defendant to do is to assign him to a completely different job. See *DePaoli*, 140 F.3d at 674. It is well established under the ADA that the employer's duty to reasonably accommodate a disabled employee includes reassignment to a vacant position for which the employee is qualified. *Dalton v. Subaru–Isuzu Automotive, Inc.*, 141 F.3d 667, 677 (7th Cir.1998). However, the law is well settled that there are limitations on the employer's duty to reassign. *Dalton*, 141 F.3d at 678. For example, an employer has no duty to "bump" an incumbent employee from a position to accommodate the request of a disabled employee. *Dalton*, 141 F.3d at 678; *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir.1996). The position must in fact be vacant. *Gile*, 95 F.3d at 499. In addition, nothing in the ADA requires an employer to abandon legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers. *Dalton*, 141 F.3d at 678. Moreover, reasonable accommodation logically cannot include transfer to yet a third job. *Dalton*, 141 F.3d at 678.

█ Here, in this case, Plaintiff was accommodated following his injuries when he was given the job of tube fabricator. This job was described as an "easy" job which requires less upper body strength than many of the positions in Defendant's plant. It is questionable whether Defendant had any further duty to accommodate. See *Dalton*, 141 F.3d at 678. However, even if Defendant could be required to offer Plaintiff another position, Plaintiff has not shown there were other available positions for which he was qualified. Plaintiff bears the burden of showing that a vacant position exists and he

is qualified for that position. *McCreary,* 132 F.3d at 1165. An individual unable to perform the essential elements of the job even with reasonable accommodations to his disability is not "qualified" under the ADA. *Matthews v. Commonwealth Edison Co.,* 128 F.3d 1194, 1195 (7th Cir.1997).

Plaintiff testified he was able to perform the job duties of the forklift job, a job in shipping and receiving and lead man. However, Defendant presented evidence that the positions of power truck/material handler, shipping and receiving clerk and lead person are *not* within Plaintiff's work restrictions. As a practical matter, the employer is entitled to define the position, in terms of both its essential scope and the qualifications required to complete the job. *Dalton,* 141 F.3d at 676. Plaintiff has not presented any evidence that he is able to perform the essential functions of any of the jobs listed in his deposition. Moreover, the court concludes that Devore's affidavit does not raise a genuine issue of material fact on this crucial issue. One of the jobs Devore states is within Plaintiff's work restrictions is tube fabricator, a job which Plaintiff testified he is unable to perform. Plaintiff has not shown he was qualified to hold any of the positions listed in his deposition or that any of the positions were available and vacant. See *Dalton,* 141 F.3d at 680. Plaintiff has not raised a question of material fact as to whether he was a "qualified individual with a disability" under the ADA. Accordingly, the court determines that summary judgment is a proper disposition in this case.

### III. Conclusion

For the reasons stated, Plaintiff is not a "qualified individual with a disability." Consequently, Defendant's Motion for Summary Judgment (# 42) is GRANTED. By granting summary judgment on Plaintiff's ADA claim (count I), this court has dismissed the only count supporting federal jurisdiction. Furthermore, the court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim (count II). See 28 U.S.C. § 1367(c)(3); *Nowak v. St. Rita High School,* 142 F.3d 999, 1000 n. 1 (7th Cir.1998); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 727–28 (7th Cir.1998). Accordingly, count II of Plaintiff's complaint is dismissed without prejudice, allowing him to refile the cause in state court. As a result of the court's determination, this case is terminated. The parties shall be responsible for their own court costs.