**Wallace G. FLOWERS, Plaintiff–Appellant, Cross–Appellee,**

v.

**KOMATSU MINING SYSTEMS, INC., Defendant–Appellee, Cross–Appellant.**

Nos. 98–2081, 98–2154.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1998.

Decided Jan. 12, 1999.

Nile J. Williamson (argued), Peoria, IL, for Plaintiff–Appellant.

David G. Lubben (argued), Roy G. Davis, Davis & Campbell, Peoria, IL, for Defendant–Appellee.

Before COFFEY, RIPPLE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Wallace G. Flowers, an employee of Komatsu Mining Systems, was implicated in a theft during an investigation into alleged kickbacks at the company. At the same time, he was being provided an accommodation by Komatsu for a severe back injury. When he was suspended and ultimately discharged, the company contended it was because of the theft of company property; Flowers says it was because of his disability, in violation of the American with Disabilities Act, 42 U.S.C. § 12101 *et seq.* A jury sided with Flowers. The issue of the proper remedy was left for the judge to decide.

Flowers was a second-shift electrical foreman at Komatsu—a managerial position in the maintenance department—and had worked at the company for 24 years. His immediate supervisor was a man named Jerry Seiver. Flowers was suspended from his position on March 11, 1994, and discharged 10 weeks later on May 31, 1994. The person who made the decision to discharge him was Robert Owen, the director of human resources.

At the pertinent time, Komatsu was conducting a general investigation into problems at the company, including charges that Seiver obtained kickbacks from contractors. During the investigation, Seiver was interviewed and implicated Flowers. The claim was that Flowers caused a piece of company equipment—a fork lift—to be removed from the company and given to one of Komatsu's outside electrical suppliers. Flowers says the item removed actually was a worthless hand jack which he delivered to the supplier at Seiver's direction.

As to Flowers' back problems, on his last days of work he was under medical restrictions; he could do no lifting or bending. He used two canes and an orthopedic chair. He was working 4–hour days. His disability, in other words, was being accommodated. On May 18, 1994, after his suspension and just before his discharge, he had back surgery. He had additional surgery on his left knee in 1994 and again in 1997. In 1995 Flowers and his wife moved to Tennessee because, he says, it was cheaper to live there and he had relatives in the area. He has not worked since he was terminated from Komatsu. However, he testified at trial that he believed he could perform his maintenance supervisory job if he were allowed the same accommodations he had in 1994, except that at trial he claimed to be able to work 8 hours a day, rather than just 4. Despite this claim, he did not seek reinstatement to his former position.

In this court, Komatsu contends that the district judge made evidentiary errors during the jury trial; both sides complain of errors in the calculation of the back-pay award; and Flowers contends he should have been awarded front pay.

■ We will first consider the evidentiary rulings. At trial, Komatsu tried to introduce the transcripts of interviews with Seiver and Flowers from the company investigation of wrongdoing. The transcripts were, respectively, 84 and 75 pages long. The judge excluded them under Rule 403 of the Federal Rules of Evidence because in his view they were cumulative, considering live testimony received during the trial. He said, "I am very concerned about sending 75 pages of documents up there when we have a day and a half trial and when all the people present during that statement have testified. I think it's cumulative."

Komatsu argues that the transcripts went to the issue of what Owens, the person who made the decision to terminate Flowers, actually believed Flowers had done. The transcripts show, in Komatsu's view, that the allegations against Flowers did, in fact, grow out of the investigation, thus lending credence to the view that Flowers' disability was not the reason for his termination.

We review the judge's ruling for an abuse of discretion and find none. If, as Komatsu contended at argument, by the time of trial Seiver had forgotten certain facts, his transcript could have been used to refresh his recollection. Komatsu chose not to use it in that fashion. We see no basis on which to conclude that the judge abused his discretion in excluding either transcript on the belief that they were cumulative.

■ A second trial issue is a rather undefined claim that somehow the judge erred by not properly responding to a note from the jury. The note, received during deliberations, said, "Could we please see the deposition and testimony of Mr. Severs." No one seems to know what the jury was referring to by the word "testimony." Komatsu wants us to think the jury wanted the transcripts we just discussed. The argument apparently is that the transcripts should have been sent to the jury in response to the note. However, if, as we have decided, the transcripts were properly excluded, the decision not to send them to the jury is, by definition, not error. Only evidence received during a trial has a chance of making it into a jury room. We again find no error on this point.

■ As we said, the remedies phase of the case was tried to the court. We have reviewed the denial of front pay and conclude that Flowers' claim was properly rejected. So we move directly to our consideration of the back-pay award and the proper relationship between a finding of disability under the Social Security Act and a finding under the ADA that a person is a "qualified individual with a disability." The ADA prohibits an employer from discriminating against a "qualified individual with a disability." 42 U.S.C. § 12112. The employer is required to make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). In comparison, under the Social Security Act, in order to receive benefits a person must establish that he is "disabled" under rather complicated and wooden standards. 42 U.S.C. §§ 416(i), 423. The issue which repeatedly arises is what effect a SSA finding of "dis-

ability" has on whether a person is a "qualified individual with a disability" under the ADA.

The question ordinarily arises during the liability phase of a trial. Here, however, Komatsu did not contend that Flowers was not a "qualified individual with a disability" at the time of his discharge. Rather, the company contended that the discharge had nothing to do with Flowers' disability. Thus, in this case the social security determination has no relevance to liability. It arises in the remedies phase of the trial because Komatsu contends that after his discharge, because of surgery in May 1994, Flowers became disabled to a degree that he could no longer do his job "with or without an accommodation" and thus was no longer a "qualified individual with a disability." The company bases its claims, in part, on the fact that Flowers applied for and was granted social security disability benefits because he was found to be disabled. It is the company's position that he is not entitled to any back pay after that finding was made.

■ It is the law of this circuit that the receipt of social security disability benefits does not preclude a person, as a matter of law, from being a qualified person with a disability. *Weigel v. Target Stores*, 122 F.3d 461 (7th Cir.1997); *McCreary v. Libbey–Owens–Ford*, 132 F.3d 1159 (7th Cir.1997). The SSA finding, however, is not irrelevant to the ADA determination. It is some evidence of the plaintiff's ability to perform the essential functions of a job. *McCreary* at 1164. The district judge clearly chafed at the fact that the social security finding of disability is not conclusive for purposes of an ADA case. In fact, he actually encouraged an appeal on the issue. However, it is difficult for us to determine exactly what effect, if any, he gave the social security finding. While the judge is right that the finding is not conclusive, under our present case law neither can it be entirely disregarded.

■ We refer to our "present case law" because the Supreme Court has recently granted certiorari on two questions in *Cleveland v. Policy Management Systems*, —— U.S. ——, 119 S.Ct. 39, —— L.Ed.2d —— (1998):

1. Whether the application for, or receipt of, disability insurance benefits under the Social Security Act, 42 U.S.C. § 423, creates a rebuttable presumption that the applicant or recipient is judicially estopped from asserting that she is a "qualified individual with a disability" under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. 2. If it does not create such a presumption, what weight, if any, should be given to the application for, or receipt of, disability insurance benefits when a person asserts she is a "qualified individual with a disability" under the ADA?

It is likely that the issue will soon be absolutely settled as to liability. But in making an award of back pay a district court has broad discretion to fashion a remedy for unlawful discrimination. *E.E.O.C. v. Gurnee Inn Corp.*, 914 F.2d 815 (7th Cir.1990). The many factors which go into an award should, despite the grant of certiorari in *Cleveland*, continue to guide that discretion. On the other hand, although the discretion is broad, it is not unfettered. The court must "locate 'a just result' in light of the circumstances of the particular case." *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997).

■ For a number of reasons, we find that to award back pay to Flowers for the entire period from his termination to the trial was an abuse of discretion. Clearly, there are times when Flowers could not work, with or without an accommodation. The most obvious is the time following his surgery (a lumbar laminectomy and spinal fusion) in May 1994. Flowers' own physician, Dr. Patrick Tracy, while he testified that at some point Flowers could have returned to work, did not indicate that Flowers was able to work as of October 1994, apparently the last time he saw him. In addition, there were other surgeries as well. These events must be considered in fashioning a proper back-pay award. Also guiding the court's discretion, as part of the evidence, should be the fact that Flowers received disability benefits from the Social Security Administration. The court can consider statements made on the applications for benefits and doctors' representations in sup-

port of the applications, keeping in mind that the ultimate issue is whether during the relevant period of time for which back pay is sought Flowers could have performed his duties at Komatsu, with or without an accommodation. By way of illustration only, after these factors are considered, it may be that the judge would find that Flowers was able to work at Komatsu for, say, 20 of the 40-plus months between his discharge and the trial. He would, of course, then be entitled to back pay for only those 20 months.

Flowers also contends that it was error to set off the social security disability payments from the back-pay award. Although both social security payments and pension payments were deducted, Flowers does not appeal the setoff of the pension benefits. But he argues that social security payments are from a collateral source and should not be offset.

The purpose of the collateral source rule is "not to prevent the plaintiff from being overcompensated but rather to prevent the tortfeasor from paying twice." *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir.1986). In an employment case, if the employer is the source of the funds at issue, then the payments can be deducted from the award. However, we have said in an age discrimination case that even if the source is collateral, "it is clear that a district court has discretion to deduct or not deduct them from an ADEA back pay award." *EEOC v. O'Grady*, 857 F.2d 383 (7th Cir.1988). It is within the district court's discretion to set off—or not to set off—social security disability payments. However, just as we hold that the back pay must be specifically calculated and tailored to the times when Flowers was a qualified individual, the only social security disability payments which can be set off are the ones he received during periods for which he received back pay—the 20 months in the illustration we just noted.

We affirm the judgment in part and remand the case to the district court for a recalculation of the periods of time for which back pay is appropriate and for other pro-

ceedings consistent with this opinion. Costs are awarded to Mr. Flowers.